# HENRY HELSER, ANCILLARY ADMINISTRATOR,

## *vs.*

# STATE OF MARYLAND.

*Decedents' estates: taxation; situs; personal property; mort-
gages and mortgage notes. Collateral inheritance tax.
Taxes: paid in error; officer receiving—, account-
able to State. Register of Wills.*

*Mobilia sequunter personam.*                       p. 231

The rule that personalty follows the person, even as to a
property tax, is not of universal application, and always gives
way to provisions of statutes fixing the situs of property for the
purpose of taxation, where such provisions are not in conflict
with the constitution.                               p. 232

Where a decedent, a non-resident, at the time of his death
owned mortgages on real estate in Maryland and notes secured
thereon, and the administrator in Maryland collects the mort-
gage debt, it is such an estate in land as to be liable for the
collateral inheritance tax, under section 120 of Article 81 of the
Code.                                                p. 232

In the absence of statutory provision, taxes paid voluntarily,
in error of law, are not recoverable.                p. 231

A collateral inheritance tax paid to a register of wills is, as
far as the administrator or executor is concerned, a payment to
the State.                                        pp. 231, 232

A register of wills, in a suit by the State to recover the col-
lateral inheritance tax, can not defend on the ground that the
tax had been unlawfully collected and paid to him.   p. 232

*Decided April 4th, 1916.*

Appeal from the Orphans' Court of Washingtton County.

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE,
BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CON-
STABLE, JJ.

*J. O. Snyder,* for the appellant.

*Scott M. Wolfinger, the State's Attorney for Washington County,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

John Helser, of Franklin County, Pennsylvania, died intestate at his home in said county on the 10th of November, 1914, leaving as his only next of kin and heirs at law, one brother, a sister and a number of nephews and nieces, all of whom were non-residents of the State of Maryland, except his brother, Henry Helser, who resided in Washington County, Maryland, and a niece residing in Cumberland.

At the time of his death the decedent owned some timber land and an undivided one-half interest in a farm in Washington County; about $1700.00 deposited in the Second National Bank of Hagerstown, Maryland, and a number of promissory notes of residents of Washington County, secured by mortgages on land in that county, which notes and mortgages, amounting to about $40,000.00, were in his possession at his home in Franklin County.

Letters of administration were granted in Franklin County, Pennsylvania, to the decedent's nephew, Helser Cook, with whom he was residing at the time of his death, and about a week later, Henry Helser, the decedent's brother, applied for and obtained from the Orphans' Court of Washington County ancillary letters of administration for the purpose of collecting the money in the banks and the notes and mortgages of the residents of that county.

Shortly after receiving letters of administration, Henry Helser, through his attorney, J. O. Snyder, Esq., who had been counsel for the decedent, and who also aided Helser Cook in securing letters of administration in Franklin County, obtained an order of the Orphans' Court of Washington County authorizing him to assign or release said mortgages, and on the 24th of September, 1915, settled in said Court his first account, in which he was charged with the cash in

the banks and sums received on account of the mortgages and other debts due the decedent to the amount of $46,427.66, and allowed for costs of administration, commissions and debts paid, amounting to $6,814.75, leaving due the estate $39,612.93, from which was deducted, and paid to the Register of Wills of Washington County, a collateral inheritance tax of five per centum, amounting to $1,980.64, and the balance destributed to the Pennsylvania administrator.

On the 16th of November, 1915, Henry Helser, ancillary administrator, filed a petition in the Orphans' Court of Washington County alleging that the amount collected by him on the mortgages was not subject to the collateral inheritance tax, and that the same was illegally, improperly and erroneously charged in the account, and praying that the account be reopened and corrected accordingly. The Orphans' Court passed an order setting the petition down for a hearing, and requiring a copy of the same to be served on the State's Attorney for Washington County. The State's Attorney filed an answer for the State of Maryland asserting that the tax was properly allowed and payable to the State, and after a hearing the Orphans' Court passed an order dismissing the petition, and this appeal is from that order.

Section 120 of Article 81 of the Code provides that: "All estates, real, personal and mixed, money, public and private securities for money of every kind passing from any person who may die seized and possessed thereof, being in this State, * * * to any person or persons, bodies politic or corporate, in trust or otherwise, other than to or for the use of the father, mother, husband, wife, children and lineal descendants of the grantor, bargainor or testator, donor or intestate, shall be subject to a tax of five per centum in every hundred dollars of the clear value of such estate, money or securities; and all executors and administrators shall only be discharged from liability for the amount of such tax, the payment of which they are charged with, by paying the same for the use of this State, as hereinafter directed."

The appellant contends that as the intestate was a resident of Pennsylvania, and the mortgages and mortgage notes were in his possession, in Franklin County, at the time of his death, under the rule *mobilia sequuntur personam* the *situs* of these debts followed the domicile of the creditor, and they were not taxable under the section of the Code referred to.

Even if we were to assume that, notwithstanding the express terms of the statute, the rule relied upon should be given effect in determining what property of a decedent is subject to the tax in question, there still remains an insuperable bar to the particular relief prayed in the appellant's petition. The record and evidence taken before the Orphans' Court show that all the facts relied upon by the appellant were known to him or his counsel prior to the statement of his account; that the account was prepared under the supervision of his counsel and the register of wills, was approved by his counsel and sworn to by the appellant before it was passed by the Orphans' Court, and that the amount of the tax was paid to the Register of Wills of Washington County. Under such circumstances the tax must be treated as having been voluntarily paid, and the settled rule in this State is, that, in the absence of some statutory provision authorizing it, taxes voluntarily paid under a mistake of law cannot be recovered back. *Baltimore v. Lefferman*, 4 Gill, 425; *Morris v. Baltimore*, 5 Gill, 244; *Lester v. Baltimore*, 29 Md. 415; *George's Creek C. & I. Co. v. Allegany Co.*, 59 Md. 255; *Baltimore v. Hussey*, 67 Md. 112; *Baltimore v. Harrey*, 118 Md. 275. The fact that the amount paid is still in the hands of the register of wills can not alter the result. Under section 121 of Article 81 of the Code it is the duty of the executor or administrator to collect and pay the tax to the register of wills "for the use of the State," and sections 143 and 144 require the register of wills to pay it to the treasurer of the State and make his bond liable for his failure to do so. The payment of the tax to the register of wills is, therefore, so far as the executor or administrator is

concerned, a payment to the State, and the register of wills in a suit by the State to recover the amount so paid could not defend on the ground that the tax had been unlawfully collected and paid to him. *Waters v. State,* 1 Gill, 302; *O'Neil v. School Commissioners,* 27 Md. 227; *State v. B. & O. Railroad Company,* 34 Md. 344; *Frownfelter v. State,* 66 Md. 80; *Lynn v. Cumberland,* 77 Md. 449. The alleged error in the account is the *allowance to the administrator* of the amount of the tax paid by him to the register of wills, and as the Orphans' Court would have no authority to order the register of wills to repay that amount, a restatement and correction of the account in the particular mentioned would afford the administrator no relief, and the petition was therefore properly dismissed.

But can it be said that the mortgages in question were not an estate, or property or money in this State within the meaning of the section of the Code imposing the collateral inheritance tax? The cases of *Latrobe v. Baltimore,* 19 Md. 22, and *Baltimore v. Hussey, supra,* cited by the appellant, deal with a property tax, while the tax we are here considering is on the transmission of estates. *State v. Dalrymple,* 70 Md. 294; *Fisher v. State,* 106 Md. 104; *Washington Hospital v. Mealey,* 121 Md. 274. The rule relied upon by the appellant, even as to a property tax, is not of universal application, and always gives way to provisions of a statute fixing the *situs* of property for the purpose of taxation, where those provisions are not in conflict with the constitution. 1 *Cooley on Taxation* (3rd Ed.), 86, 87; 37 *Cyc.* 1560-62; *Baldwin v. Washington County,* 85 Md. 145; *Allen v. National State Bank,* 92 Md. 509. The collateral inheritance tax is a tax imposed on *all* estates and property, "being in this State," passing to any person other than those mentioned in the statute. In *State v. Dalrymple, supra,* the estate of a non-resident testator, consisting of certificates of national bank stock, Baltimore City stock, Missouri state bonds and cash, in the hands of administrators to whom letters of administration with the will annexed had been granted

by the Orphans' Court of Baltimore City, was held to be
subject to the tax, and in disposing of the case JUDGE Mc-
SHERRY, after referring to the several sections of the Code
relating thereto, said: "It is thus quite apparent that the
whole scheme of the law looks to and contemplates the col-
lection of the tax through an executor or administrator exer-
cising authority under the laws of this State, and answer-
able to those laws for the faithful performance of his duties.
Ample provision is made for every possible contingency that
may arise, whether the decedent be a resident of this State
or not, provided the property be located here if he be a non-
resident, or actually or constructively here, if he be a resi-
dent.   No estate can escape administration if the law be
enforced, and when property passes into the hands of the
executor or administrator his obligation to pay the tax is
fixed and his bond at once becomes liable therefor.   The tax,
we have said, is on the transmission of the property 'being in
this State,' and no reason has been assigned or can be sug-
gested why the broad language of the statute and the evi-
dent design of the Legislature should be so narrowed and
restricted as to exempt from the tax the property of a non-
resident actually here, notwithstanding that same property
may, for other purposes, be treated as constructively else-
where.   If we adopt the view insisted on by the appellees it
would result in a discrimination in favor of the non-resident
and against our own citizens, a discrimination, too, which the
Legislature certainly never intended to make, and for which
no warrant whatever can be found in the plain letter of the
statute."   In that case the appellees relied on the case of
*Citizens Nat. Bank* v. *Sharp,* 53 Md. 521, where the Court
held that the voluntary payment of a debt by a debtor of
this State, before any administration had been granted in
Maryland, to the administrator appointed in the State where
the creditor had his domicile, was a complete discharge of
the debt, and JUDGE McSHERRY, in reference to *Bank* v.
*Sharp, supra,* said: "The domestic administrator never re-
ceived the money, and no demand was ever made upon him

for the payment of the tax. * * * In the case now before us the property is in the hands of the Maryland administrators under the laws of this State. Those laws have been invoked to enable them to receive it, and their bond, under the express terms of the statute, is liable for the payment of the tax."

In the case of *Allen* v. *National State Bank, supra,* where a non-resident corporation resisted payment of a tax on a mortgage on land in Maryland on the ground that the mortgage was a *chose in action* and was only taxable at the domicile of the mortgagee, this Court, speaking through JUDGE FOWLER, said: "Conceding, for the present, that the interest of the mortgagee is in the nature of a *chose in action,* the general rule that its *situs* for taxation is the residence of the owner, is a mere fiction of law, and 'yields whenever it is necessary for the purpose of justice that the actual *situs* of the thing should be examined, and whenever the legislative intent is manifested that this legal fiction should not operate.'" He then quotes the statement of Mr. JUSTICE GRAY in *Savings Society* v. *Multnomah Co.,* 169 U. S. 421, where the Supreme Court was considering a tax on an Oregon mortgage: "Although the right which the mortgage transfers in the land covered thereby is not a legal title, but only an equitable interest and by way of security for the debt, it appears to us to be clear upon principle, and in accordance with the weight of authority, that this interest, like any other interest legal or equitable may be taxed to its owner (whether resident or non-resident) in the State where the land is located." Having disposed of the case upon the assumption that the mortgage was a *chose in action,* JUDGE FOWLER said further: "In this State, however, it has long been held that a mortgagee takes something more than a mere lien." After citing the Maryland cases to the effect that the mortgagee acquires a legal estate, defeasible at law upon payment of the mortgage debt, he refers to the further statement of Mr. JUSTICE GRAY in the *Savings Society Case:* "If the law treats the mortgagee's interest in the land as real estate for his protection, it is not easy to see why the

law should forbid its being treated as real estate for the purpose of taxation," and then says, "in this State the mortgagee at law becomes vested with a legal estate and therefore he may maintain an action of ejectment. *Ahern* v. *White,* 39 Md. 422-423. If this be so, then, at law the mortgagee has a title to an interest in the land and therefore has property in this State subject to taxation." In the case of *Savings Society* v. *Multnomah Co., supra,* Mr. JUSTICE GRAY cites the statement of JUDGE WALDO in *Mumford* v. *Sewell,* 11 Oregon, 68: "Concede that the debt accompanies the respondent's person and is without the jurisdiction of the State. But the security she holds is Oregon security. It can not be enforced in any other jurisdiction. It is local in Oregon absolutely as the land it binds. Since the power of estate over the mortgage is exclusive and complete as over the land mortgaged, the mortgage is subject to taxation by the State."

In the case of *Blackstone* v. *Miller,* 188 U. S. 189, the tax was levied under the New York law on the transfer by will of certain property of the testator, who was domiciled in Illinois, consisting of a debt of $10,692.20 due the deceased by a firm, and of the sum of $4,843.72, held on a deposit account by the U. S. Trust Company of New York. In the course of the opinion Mr. JUSTICE HOLMES said: "If the transfer of the deposit necessarily depends upon and involves the law of New York for its exercise, or, in other words, if the transfer is subject to the power of the State of New York, then New York may subject the transfer to a tax. * * * But it is plain that the transfer does depend upon the law of New York, not because of any theoretical speculation concerning the whereabouts of the debt, but because of the practical fact of its power over the person of the debtor. This principle has been recognized by this Court with regard to garnishments of a domestic debtor of an absent defendant. * * * What gives the debt validity? Nothing but the fact that the law of the place where the debtor is will make him pay. * * * Power over the debtor confers jurisdiction, we

repeat. And this being so we perceive no better reason for denying the right of New York to impose a succession tax on debts owed by its citizens than upon tangible chattels found within the State at the time of the death. The maxim *mobilia sequuntur personam* has no more truth in the one case than the other. When logic and the policy of the State conflict with the fiction due to historical tradition, the fiction must give way. * * * The fact that two States, dealing each with its own law of succession, both of which the plaintiff in error has to invoke for her rights, have taxed the right which they respectively confer, gives no cause for complaint on constitutional grounds. * * * The universal succession is taxed in one State, the singular succession is taxed in another. The plaintiff has to make out her right under both in order to get the money."

Of course the Supreme Court, in the two cases referred to, was dealing with the question of the power of the State to impose the tax referred to, but the reasoning of that Court, and the reasoning and decisions of this Court in *Dalrymple's Case* and *Allen's Case* lead to the conclusion that John Helser, at the time of his death, had, by virtue of the mortgages collected by the administrator, an interest or estate in lands in Washington County which was protected by the laws of this State, and that those laws having been invoked to enable the appellant to receive the amount of said mortgages the sum collected was subject to a collateral inheritance tax. This view is in accord with the decisions of the Supreme Court of Massachusetts and the Supreme Court of Michigan, construing similar statutes. *Kinney v. Stevens, Treasurer,* 207 Mass. 368, 93 N. E. 586, 35 L. R. A. (N. S.) 784; *In re Rogers,* 149 Mich. 305, 11 L. R. A. (N. S.) 1134.

It follows from what has been said that the order of the Orphans' Court must be affirmed.

*Order affirmed, with costs to the appellee.*