# BALTIMORE COUNTY, MARYLAND *v.* XEROX CORPORATION

[No. 25, September Term, 1979.]

*Decided October 23, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*John A. Austin, Assistant County Solicitor,* with whom was *Leonard S. Jacobson, County Solicitor,* on the brief, for appellant.

*Charles C. Shelton* and *Benjamin R. Goertemiller,* with whom were *Semmes, Bowen & Semmes* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

This appeal concerns the procedure required to be followed to obtain a refund of monies paid in excess of the amount properly chargeable as ordinary taxes on a corporation's tangible personal property located in Maryland.

## I

Tangible personal property belonging to any corporation, domestic or foreign, which is subject to ordinary taxation under the revenue and tax laws of Maryland shall be valued and assessed for purposes of State, county and city taxation by the State Department of Assessments and Taxation. Maryland Code (1957, 1975 Repl. Vol.) Art. 81, § 13(b)(5).[1]

---

1. Hereinafter, all citation of sections are to Article 81 of the 1975 Replacement Volume of the 1957 Maryland Code unless otherwise indicated.

Such property belonging to Xerox Corporation was valued and assessed by the Department for tax years 1970 through 1973. Aggrieved by the final action taken by the Department, Xerox protested the assessment, and the matter was heard in the Maryland Tax Court. Since, however, "[n]o appeal shall stay or in any manner affect the collection or enforcement of the assessment, tax, levy, or classification complained of" unless the taxpayer file a bond "conditioned upon the payment of such assessment and all interest accruing thereon until paid," § 260, Xerox paid the taxes. The Maryland Tax Court issued an opinion in favor of Xerox. The Department appealed to this Court, and we remanded for further proceedings. *St. Dep't of A. & T. v. Greyhound Comp.,* 271 Md. 575, 320 A.2d 40 (1974). Further proceedings were had, but before decision was reached the Department and Xerox entered into a settlement agreement which recognized that there had been an overassessment of the property in question with the result that the taxes paid by Xerox were more than the amount actually due. Thereupon the Maryland Tax Court issued orders reducing the assessment of the property for each of the years in question. As it is the duty of each county collector "to collect as certified to him [by the Department] all State and county taxes levied or to be levied," § 51, the Department, on 30 March 1977, sent to all counties final certification of the reduced assessments and taxes to be levied. Pending the outcome of the dispute involving tax years 1970 through 1973, the Department had withheld assessing the property concerned for subsequent years. It, therefore, on 18 April 1977, certified to the counties original assessments and taxes to be levied on the property for tax years 1974 through 1976. Thus, based upon the reduced valuation of the property, Xerox was due a refund on the taxes it had paid for tax years 1970 through 1973 and owed taxes for tax years 1974 through 1976. According to an affidavit by Xerox in the record before us, all counties concerned, except Baltimore County, resolved the matter of the refund by either sending Xerox a check for the excess paid upon receipt of Xerox's payment of the taxes due or by crediting the overpayment to those taxes. Baltimore County,

however, took no action with respect to the refund. It billed Xerox under date of 6 May 1977 in the amount of some $600,000 for the taxes due on the property for tax years 1974 through 1976 and called for payment in full by 5 June.

Xerox wrote Baltimore County explaining that under Maryland law it had become entitled to a refund upon settlement of the dispute over the assessment covering the tax years for which it had paid the taxes. It submitted a check for the difference between the taxes due and the amount of the refund. Baltimore County returned the check and stated that upon payment in full of the taxes for tax years 1974 through 1976 and receipt of a copy of the agreement between the Department and Xerox whereby the assessment for tax years 1970 through 1973 had been determined, it would "review [Xerox's] request for refunds in accordance with law."

On 9 February 1978 Xerox filed a Bill of Complaint in the Circuit Court for Baltimore County seeking a declaratory judgment and injunctive relief. In the interim, Xerox had made clear that it was willing to pay the difference between the taxes due by it and the refund owed it and that its view was that Baltimore County was required to refund the over-payment without further action on Xerox's part. Baltimore County held stubbornly to its position that all outstanding taxes should be paid in full and that Xerox must follow certain administrative procedures to obtain the excess monies it had paid. The dispute was intensified when Baltimore County refused to accept Xerox's payment for taxes as billed on 4 January 1978 for tax year 1977, because taxes previously billed had not been paid.

The Circuit Court for Baltimore County granted an ex parte injunction and then an interlocutory injunction, effective 1 March 1978, enjoining Baltimore County from instituting a collection action which would duplicate the litigation then before the court. By its terms, this injunction was to dissolve upon a final determination of the rights of the parties. Baltimore County appealed the grant of this interlocutory injunction to the Court of Special Appeals, but before it was heard, the trial court entered a final judgment. Thereupon, the Court of Special Appeals dismissed the appeal as moot.

The case proceeded to final disposition in the Circuit Court for Baltimore County on 31 May 1978. The court held that the final Maryland Tax Court orders of 7 March 1977 finally determined Xerox's tax liability and were binding on Baltimore County. Baltimore County does not now dispute this. The court further found that Xerox was entitled to a refund of the excess taxes it had paid without further action on its part. The tax payable by Xerox to Baltimore County included in the court's order was computed by deducting from the tax bills for tax years 1974-1977 the State personal property taxes Xerox paid to the Comptroller of the State of Maryland,[2] the excess tax payments made by Xerox to Baltimore County, and interest on those excess payments. Due to a mathematical error in the calculations, a new tax determination was made on 23 June 1978 and the prior judgment was modified accordingly and became the final judgment. The judgment was affirmed on direct appeal. *Baltimore County v. Xerox Corp.,* 41 Md. App. 465, 397 A.2d 278 (1979). We granted Baltimore County's petition for a writ of certiorari.

## II

The issue for decision is whether, upon a final determination that Xerox had paid money to Baltimore County in excess of the amount properly chargeable for ordinary taxes on tangible personal property, Baltimore County was obliged to refund such excess automatically without further action on the part of Xerox.[3]

---

**2.** During the litigation the Comptroller agreed to accept the payment previously tendered by Xerox to Baltimore County for personal property taxes due the State.

**3.** The other question presented by the petition for a writ of certiorari, which went to the propriety of the issuance of an ex parte and an interlocutory injunction, is easily determined. The interlocutory injunction was substituted for the ex parte injunction. The interlocutory injunction was dissolved by its terms upon a determination of the case on its merits. In any event, after such determination an appellate court could not provide relief to either party by reviewing the injunction; its decision would operate in a vacuum. The propriety of the issuance of the injunction had become moot, and the Court of Special Appeals was correct in dismissing the appeal on that ground. Wash. Sub. San. Comm'n v. TKU Associates, 281 Md. 1, 25, 376 A.2d 505 (1977); Montgomery Co. v. Metropolitan Dis., 200 Md. 525, 92 A.2d 350 (1952).

It is manifest that all of the administrative remedies with regard to the assessment of Xerox's tangible personal property subject to ordinary taxes had been exhausted. The assessment had been finally determined, and the amount properly chargeable to Xerox had been fixed once and for all. That Xerox was entitled to a refund in a certain amount was no longer open to question. Xerox claims that § 261 was invoked thereby. That section, at the time of this case, provided, under the heading "Refunds":

> Upon final determination of any appeal, any money paid in excess of the amount properly chargeable under such determination, shall be refunded with interest at the rate of six per cent. (6%) per annum from the date of payment to the date of refund. The sources of refund shall be [as] specified in the applicable provisions of §§ 213 to 219, inclusive, of this article.[4]

This legislative mandate would appear to be dispositive of the issue before us. But Baltimore County seizes on the reference to §§ 213 to 219 and urges that any refund must be made pursuant to the requirements of those sections. Those sections are subtitled "Refund of Taxes" and permit any person claiming to have erroneously or mistakenly paid more money than was properly and legally chargeable to or collectible from him for State taxes, § 213, or county taxes,[5] § 214(a), to file a written demand for a refund. If such State taxes have been so paid into the treasury of the State the written demand may be filed with the Comptroller of the State, and if approved by him, "shall be refunded out of any funds appropriated for such purpose, or, if no such funds are available, shall be certified to the Governor for inclusion in the next budget." If such State taxes have been so paid to any collector, claims for refund may be made to him, and he, if authorized by the Comptroller, may refund the taxes "out of any State funds in the hands of such collector. . . ." § 213. If

---

4. The section as enacted by Acts 1959, ch. 757 did not contain the word "as" in the last sentence, obviously by inadvertence. It was inserted, set off by brackets, in the codification of the Act. It appears in the reenactments of the section by Acts 1977, ch. 457 and Acts 1978, ch. 84.

5. Section 214 also deals with municipal and Baltimore City taxes.

such taxes were so paid to a county, written demand may be filed with the county collector, and, if approved by him, the county commissioners "shall levy and pay to [the claimant] any money that was so paid." § 214(a). As to both State and county taxes, no refund shall be made or approved in any case where it appears that the assessment upon which such taxes were levied and collected has become final and has not been modified on appeal, and the only basis for the refund is a claim that such assessment was erroneous or excessive. The prohibition does not apply where a person has paid a tax bill which is erroneous "by reason of any mere mathematical, mechanical or other clerical error by the taxing authority, exclusive of any error of valuation, in the computation, calculation or recordation of the assessment upon which said tax bill is based." Also, as to both State and county taxes, the claim for refund must be filed within three years from the date of payment. §§ 213-214.

Without doubt the refund provisions of Article 81 were enacted to modify the common law rule which established barriers to the recovery of taxes paid, presumably due originally to the reluctance of the sovereign to disgorge what had been given it.

> No principle is better settled than that where a person, with full knowledge of the *facts, voluntarily* pays a demand unjustly made upon him, though attempted or threatened to be enforced by proceedings . . . it will not be considered as paid by compulsion, and the party thus paying, is not entitled to recover, though he may have protested against the unfounded claim at the time of payment made. . . . [*Lester v. Mayor and City Council of Baltimore,* 29 Md. 415, 418 (1868).]

*See White v. Prince George's Co.,* 282 Md. 641, 651-653, 387 A.2d 260 (1978). An action will lie at common law for money paid under a mistake of the facts, or under circumstances of fraud and extortion, or as necessary to obtain possession of goods wrongfully withheld from the party paying the money, *Lester* at 418, but the general rule firmly established in

Maryland is that "a common law action will not lie to recover taxes erroneously paid under a mistake of law." *White* at 651, and cases cited therein at 651-653.

We pointed out in *White* at 653, n. 7, however, that our cases have recognized a circumstance under which a common law action in assumpsit is available to recover taxes voluntarily paid under a mistake of law. This Court has held that where a statute changed the common law rule and provided that the taxpayer was entitled to a refund but did not contain a special statutory remedy, an action in assumpsit could be maintained. *George's Creek Coal & Iron Co. v. County Comm'rs of Allegany Co.,* 59 Md. 255, 260-261 (1883). *See Baltimore v. Finance Corp.,* 168 Md. 13, 18, 176 A. 480 (1935); *Baltimore v. Home Credit Co.,* 165 Md. 57, 65, 166 A. 604 (1933).

Section 261 is the last of seven sections under the subtitle "Appeals." This subtitle was part of the enactment of the Legislature. *See* Acts 1929, ch. 226. The six preceding sections under the subtitle, §§ 255-260 concern only assessments of property, and it follows that the reference in § 261 to "any appeal" is to any appeal with respect to an assessment. Therefore, § 261 requires that upon final determination of any appeal which results in a finding that money was paid in excess of the amount properly chargeable *because of an improper assessment,* the excess shall be refunded. In other words, § 261 provides for a refund arising from overpayment due to an assessment duly challenged and found to be wrong. Section 261 does not predicate its duty of refunding the erroneous tax collection upon any mistake, either of law or of fact,[6] and, indeed, any characterization of the overpayment as a mistake or otherwise is immaterial. The clear legislative intent is that any money paid in excess of the amount properly chargeable under a correct assessment must be refunded with interest. Thus, the section changes the common law rule,

---

6. "At common law recovery of money paid under a mistake of fact is limited to money paid or received under a mistake on the plaintiff's part, or a mutual mistake; it does not include money demanded and received by the defendant under an erroneous contention, without any mistake on the plaintiff's part." Wasena Housing Corp. v. Levay, 188 Md. 383, 387, 52 A.2d 903 (1947).

and, unless it provides a special statutory remedy to obtain the refund, an action would lie to collect the excess payment on an implied assumpsit arising from the duty to refund.

Section 261 contains the provision that "[t]he sources of refund shall be as specified in the applicable provisions of §§ 213-219, inclusive, of this article." Baltimore County grasps this reference to §§ 213-219 for support in urging that those sections provide the exclusive administrative remedies to be followed in connection with any tax refund claims. It claims it has no authority to pay the refund which it is required to pay under § 261 unless there is conformance with the procedures for refund prescribed by §§ 213-219. We do not see it that way. We believe that such a position is utterly untenable. The reference in § 261 to §§ 213-219 goes to no more than the source of the funds necessary to pay the refund. This is clear from the face of the statute, but, in any event there is not the slightest indication, nor are we able to discern any reasonable inference that the reference impresses any of the procedural requirements of §§ 213-219 on the dictate of § 261 to refund.

The history of the subject sections supports our view. Most of the Maryland tax laws were fathered in Article 81 by Acts 1929, ch. 226 as suggested by *The Report of The Maryland Tax Revision Commission* to correct "the most execrable confusion of form" found by the Commission. Under the subtitle "Refund of Taxes" the Comptroller of the Treasury and the State Treasurer were directed, in every year of the meeting of the General Assembly, to make out from their books an accurate list of the names of all persons who had erroneously or mistakenly paid into the treasury of the State more money for State taxes than was properly and legally chargeable to them. The list with the amount of such taxes, had to be certified to the Governor, who had to include it without alteration in the budget. Code (1924, 1929 Supp.) Art. 81, § 152. Whenever any person erroneously or mistakenly paid to any county more money for taxes than was legally chargeable, the County Commissioners had to "rectify the error and immediately levy and pay to such person any money

that was so paid." *Id.* § 153. With respect to appeals from assessments, § 188 provided, *inter alia,*

> but upon the final determination of any such appeal any taxes which such determination may show to have been illegally collected, shall be to the extent of illegality forthwith refunded with interest, and the disbursing officers of the State and of the several counties and cities of the State are authorized and directed forthwith to make such refunds.

By Acts 1937, ch. 469, §§ 152 and 153 were amended to provide that a claim be made by written demand for a refund of taxes erroneously or mistakenly paid and the same sources of the funds for the refund as now provided by §§ 213 and 214 were specified. Section 188 was also amended by ch. 469. As to payment of a refund it provided that

> upon the final determination of any such appeal any money paid, in excess of the amount properly chargeable under such determination, shall be refunded by the collector to whom such excess payment was made, *out of any local tax funds in his hands, for the refund of local taxes, and out of any State funds in his hands, for the refund of State taxes.* [Emphasis added.]

By 1959 the refund provisions of former § 188 were contained in § 261. Acts 1959, ch. 757 amended the section to read as we now consider it for the purpose of this case and have set out *supra.* As is apparent, the specific reference to the sources of the funds was deleted and the sources were denoted merely by reference to §§ 213 and 219. Thus, it is patent that the mention of §§ 213 and 219 in § 261 goes only to the sources of the refund monies and no farther.[7]

7. The circumstances of the instant case demonstrate the inherent absurdity of Baltimore County's position. Xerox's refund request would be addressed to the discretion of the very authorities who had already unequivocally expressed their intention to ignore the mandate of § 261. From denial of this request, appeal would be to the same Maryland Tax Court which already had entered a final order determining that the money was due from Baltimore County to Xerox. The Tax Court, upon the finality of its earlier

We have no need to decide here whether the refund procedures of §§ 213 and 214 are available to a person entitled to a refund under § 261. For the purpose of decision we assume that they are. But under no reasonable interpretation could they be said to be the exclusive method to obtain the refund. There is an alternative remedy. Even if Xerox could have proceeded under § 214, our law is plain that because there was no special statutory remedy provided by § 261 to enforce the duty imposed by that section to pay the refund, it could have sought the payment by an action in assumpsit. The existence of this alternative remedy under common law principles placed the case in the category of "exceptional cases" as to which there need be no exhaustion of a special administrative remedy before resort to the courts. *White v. Prince George's Co.,* 282 Md. at 649-650. Such alternative remedy also placed the case without the ambit of Maryland Code (1974) § 3-409(b) of the Courts and Judicial Proceedings Article, and by virtue of § 3-409(c) of that Article did not preclude Xerox from seeking a declaration of its rights as it was entitled to do under § 3-406 of that Article. *See White* at 650; *Pressman v. State Tax Commission,* 204 Md. 78, 83-84, 102 A.2d 821 (1954).

We hold that upon the final determination that Xerox had paid money to Baltimore County in excess of the amount properly chargeable for ordinary taxes on the tangible

---

order, should again order that the money was due. Xerox would again, under Baltimore County's theory, be required to file a claim for refund under § 214. It seems that there would be an endless circuity of refund requests and appeals, during the course of which Baltimore County, in accordance with its expressed intention, would have pursued legal action to collect the taxes due for the later years.

We do not speculate as to the reason why Baltimore County has taken a position contrary to that taken by twenty-two counties and Baltimore City. But it may be gleaned from comments by counsel for Baltimore County during argument before the trial court that it was then hopeful of having the assessment of the tangible personal property relitigated through the refund procedures it pressed, although it now, as it must in light of Art. 81, § 229 (i), accepts the valuation of such property as final. We observe that in Baltimore County's brief filed in this Court it emphasizes that there is a three year limitation on petitions for refund from the date of payment, and that in oral argument it did not deny the possibility that it would raise the matter of limitations as a bar to any refund not requested within the time prescribed by § 214. We refrain from expressing an opinion of this apparent reluctance to pay money duly found to be legally owed.

personal property here involved, Baltimore County was obliged to refund such excess automatically without further action on the part of Xerox. The Court of Special Appeals was correct in affirming the judgment of the Circuit Court for Baltimore County and we affirm the judgment of the Court of Special Appeals.

*Judgment affirmed; costs to be paid by appellant.*