512 A.2d 379

**Gary NORDHEIMER et al.**

**v.**

**MONTGOMERY COUNTY, Maryland.**

No. 142, Sept. Term, 1984.

Court of Appeals of Maryland.

July 25, 1986.

**86**

Barbara A. Sears, Silver Spring (John J. Delaney, Larry A. Gordon and Linowes and Blocher, Silver Spring and Michael E. Jaffe, James H. Hulme, Russell M. Blau and Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., on brief), for appellants.

Clyde H. Sorrell, Sr. Asst. Co. Atty. (Paul A. McGuckian, Co. Atty. and Robert G. Tobin, Jr., Deputy Co. Atty., on brief), Rockville, for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

ELDRIDGE, Judge.

This case involves claims for refunds of transfer taxes paid to Montgomery County in connection with the conversion of rental property into a condominium, contentions concerning the validity of the Montgomery County taxes imposed, and a request for an injunction preventing the collection of further county taxes based on the conversion of the property.

## I.

Before setting forth the facts of this case, it would be useful to review briefly the pertinent statutory background.

In 1974 the General Assembly enacted the Horizontal Property Act, a statute applicable throughout the State. Ch. 641 of the Acts of 1974. One provision of that statute, previously codified in Code (1974, 1980 Cum.Supp.), § 11–120(b) of the Real Property Article (now in Code (1974, 1981 Repl.Vol.), § 11–122(b) of the Real Property Article), prohibits local governments or other governmental bodies from

enacting laws, ordinances or regulations imposing burdens on condominiums which are not imposed on all other similar property not subject to a condominium regime.[1] The Horizontal Property Act also specified in § 11–127 of the Real Property Article (1974, 1980 Cum.Supp.) that, in the event of a conflict between the Act and any other law, including a public general law enacted by the General Assembly, the Horizontal Property Act would prevail.[2] For a detailed discussion of the Horizontal Property Act, and particularly §§ 11–120 and 11–127, as well as the background of the statute, *see* Judge Rodowsky's opinion for the Court in *Rockville Grosvenor, Inc. v. Mont. County*, 289 Md. 74, 422 A.2d 353 (1980).

---

1. Section 11–120 of the Real Property Article (1974, 1980 Cum.Supp.) stated as follows:

   "(b) No county, city, or other jurisdiction may enact any law, ordinance, or regulation which would impose a burden or restriction on a condominium that is not imposed on all other property of similar character not subjected to a condominium regime. Any such law, ordinance, or regulation, is void."

   As reenacted by Ch. 246 of the Acts of 1981, the section (numbered § 11–122(b) of the Real Property Article (1981 Repl.Vol.)), provides as follows:

   "(b) Except as otherwise provided in this title, a county, city, or other jurisdiction may not enact any law, ordinance, or regulation which would impose a burden or restriction on a condominium that is not imposed on all other property of similar character not subjected to a condominium regime. Any such law, ordinance, or regulation, is void. Except as otherwise expressly provided in §§ 11–130, 11–138, 11–139, and 11–140 of this title, the provisions of this title are statewide in their effect. Any law, ordinance, or regulation enacted by a county, city, or other jurisdiction is preempted by the subject and material of this title."

2. Section 11–127 stated in pertinent part as follows:

   "(a) The provisions of this title are in addition and supplemental to all other provisions of the public general laws, the public local laws, and any local enactment in the State.

   \* \* \* \* \* \*

   "(c) If the application of the provisions of this title conflict with the application of other provisions of the public general laws, public local laws, or any local enactment, in the State, the provisions of this title shall prevail."

   These identical provisions are now contained in § 11–141 of the Real Property Article (1974, 1981 Repl.Vol.).

The next relevant statute is Ch. 648 of the Acts of 1980, which became effective on July 1, 1980. In that enactment, the General Assembly amended the public local laws of Montgomery County by adding to the provisions authorizing real estate transfer taxes an authorization to levy and impose a tax of

"four percent of the value of the consideration for the initial transfer of a residential unit subject to a condominium regime offered for rent for residential purposes prior to the establishment of the condominium regime. The tax shall be paid by the initial transferor of the residential unit."

Ch. 648 related specifically, and only, to the initial transfers of units subject to a condominium regime.

Pursuant to the authority set forth in Ch. 648, the Montgomery County Council enacted Bill No. 22–80, which was signed by the County Executive and became law on July 28, 1980. This ordinance, codified as § 52–21(h) of the Montgomery County Code (1972, 1977 Repl.Vol., 1981 Cum. Supp.), is the subject of the challenge in the instant case. It requires that owners of rental units who convert their properties to condominiums pay four percent of the sales price for each unit at the time of initial sale and transfer. The ordinance further provides that transfers will be exempt from the tax if the condominium regime was established "prior to the effective date of this law." [3]

---

**3.** Section 52–21 of the Montgomery County Code (1972, 1977 Repl. Vol., 1981 Cum.Supp.), as amended by Bill No. 22–80, provides in relevant part as follows:

"There is hereby levied a tax on (1) all transfers in the county of a fee simple interest in real property.... The tax shall be computed on the value of the full consideration for such transfer at the following rates:

      *    *    *    *    *    *

"(h) Four percent of the value of the consideration for the initial transfer of a residential unit subject to a condominium regime, which unit was offered for rent for residential purposes prior to the establishment of the condominium regime.

      *    *    *    *    *    *

The following year, by Ch. 797 of the Acts of 1981, the General Assembly authorized Montgomery County to levy and impose a tax of

"four percent of the value of the consideration for the initial transfer of stock or other evidence of membership in a cooperative housing corporation or similar entity where such stock corresponds to a residential unit which is being converted from rental status to a system of cooperative housing corporation ownership...."

Montgomery County, by Bill No. 24–81, effective July 1, 1981, imposed such a cooperative transfer tax.

## II.

Turning to the facts of the instant case, Parkside Associates acquired title to the 954 unit Parkside Apartments complex by a deed dated July 31, 1980. On April 14, 1981, by recording a declaration, bylaws and condominium plats among the land records of Montgomery County, Parkside Associates converted the complex to a condominium regime and began selling units. Between April 29, 1981, and April 6, 1984, Parkside Associates transferred title to 928 of the units. Montgomery County demanded that Parkside Associates pay, and Parkside Associates have paid, a total of at least $2,741,978.17 in taxes on the initial title transfers, pursuant to § 52–21(h) of the Montgomery County Code.

Parkside Development Corporation and Parkside Tenants' Association, both of which are tenants' organizations, together with various individual tenants of Parkside Apartments, filed in the Circuit Court for Montgomery County a bill of complaint in 1981, an amended bill of complaint in

---

"(2) No transfer of any interest in real property shall be taxed under subsection (h) where:

\* \* \* \* \* \*

"b. The transfer is of a unit in a condominium regime established by recording a declaration, bylaws and condominium plat, prior to [July 28, 1980], pursuant to the provisions and requirements of the Horizontal Property Act, title 11, Real Property Article, Maryland Code Annotated."

1983, and a second amended bill of complaint in 1984, naming as defendants the two corporations who were general partners of and trading as Parkside Associates, Gary Nordheimer who was allegedly a Parkside Associates general partner, and Montgomery County. Among other things, the plaintiffs requested a declaratory judgment as follows:

"Declare that the Condominium Transfer Tax, Section 52–21(h) does not apply to the initial transfer of condominium units at the Parkside Condominium since it violated the provisions of Sections 11–120(b) and 11–127(c), Real Property Article, Annotated Code of Maryland.

"Declare that the Condominium Transfer Tax, Section 52–21(h) does not apply to the initial transfer of condominium units at the Parkside Condominium since it violates the equal protection of Article 24, Declaration of Rights, Maryland Constitution and/or the Fourteenth Amendment, United States Constitution."

Parkside Associates and Nordheimer filed a cross bill of complaint against Montgomery County seeking, *inter alia,* a refund of the condominium transfer taxes paid to Montgomery County on the transfers of units at Parkside Apartments which had already taken place, an injunction against requiring the payment of the condominium transfer taxes on future transfers, and a declaration

"... that the Condominium Transfer Tax Law, Montgomery County Code, Section 52–21(h), was not legally effective on April 14, 1981, since it violated the provisions of *Annotated Code of Maryland,* Real Property Article, Sections 11–120(b) and 11–127(c) (1974, 1980 Cum.Supp.),

"... that the Condominium Transfer Tax Law, Montgomery County Code, Section 52–21(h), was not legally effective on April 14, 1981, since it violated equal protection under (a) Article 24, Declaration of Rights, Maryland Constitution, and/or (b) Fourteenth Amendment, United States Constitution,

"... that the past, present and future transfer of condominium units in Parkside Condominium are not sub-

ject to the Condominium Transfer Tax Law, Montgomery County Code, Section 52–21(h)."

Upon motions for partial summary judgment, the circuit court granted Montgomery County's motion for summary judgment, declared "that Section 52–21(h) of the Montgomery County Code does not violate the provisions of the Annotated Code of Maryland, Real Property Article, §§ 11–210(b) and 11–127(c) ... [the Horizontal Property Act] or equal protection under Article 24, Declaration of Rights, ... and/or equal protection under the Fourteenth Amendment ... because of any classification established therein in its application to the units at issue." The court also made the ruling final, ordering, "pursuant to Maryland Rule 2–602 and upon determination that there is no just reason for delay, that final judgment be ... entered in favor of Montgomery County ... as to all claims against Montgomery County...." [4] The order was entered on July 9, 1984, and all parties except Montgomery County filed orders of appeal.[5] We issued a writ of certiorari while the case was pending in the Court of Special Appeals.

### III.

In arguing that it was entitled to a favorable declaratory judgment, to a refund of all transfer taxes paid and to an injunction against the collection of taxes with respect to future initial transfers of units at Parkside Apartments, Parkside contends that the Montgomery County condominium transfer tax ordinance was invalid when signed into law on July 28, 1980, because it imposed the tax on the initial transfers of condominium units without a like tax being imposed on the initial transfers of cooperative units. Because of this discrepancy, according to Parkside, the condominium transfer tax violated the section of the Horizontal

---

**4.** Remaining for adjudication in the trial court were various matters between the plaintiffs and the defendants Parkside Associates and Nordheimer.

**5.** Hereafter all appellants will be referred to simply as "Parkside."

Property Act (now § 11–122(b) of the Real Property Article), prohibiting governmental bodies from enacting laws imposing a burden on condominiums that is not imposed on property of a similar character. Parkside does not believe that Ch. 648 of the Acts of 1980 saved the condominium transfer tax because, in Parkside's view, the Horizontal Property Act prevails over the conflicting provisions of Ch. 648. Parkside thus argues (brief, pp. 12–13):

"The Condominium Transfer Tax cannot be saved from invalidation under *Md. Real Prop. Code Ann.* § 11–120(b) by reference to 1980 Maryland Laws, Chapter 648, a *public local law* which purported to grant Montgomery County the authority to enact the Condominium Transfer Tax. Section 11–120(b) and Chapter 648 must be read together with *Md. Real Prop. Code Ann.,* § 11–127(c) (1974, 1980 Cum.Supp.).

"Section 11–127(c) evidences the clear and unambiguous legislative intention to exempt the HPA [Horizontal Property Act] from the general rule that a public local law prevails over conflicting provisions of a public general law. *Md.Ann.Code,* Art. 1, § 13. The General Assembly dictated that the HPA shall uniformly apply across the State, absent an express amendment to the HPA. This requirement of uniformity prevents unintentional changes to the HPA in cases where public local laws are adopted without their potential conflict with the HPA being recognized at the time of adoption.

"The legislative intent evident in the unambiguous and superior command of § 11–127(c) is dispositive because the issue of whether a public general law should prevail over a public local law, or vice versa, is a question of legislative intent."

The only effect of Ch. 648, under Parkside's argument, was "to expand Montgomery County's *potential* taxing powers to include condominiums" and to enable Montgomery County to enact the condominiums transfer tax in accordance with the Horizontal Property Act (*id.,* p. 13).

Parkside asserts that the condominium transfer tax remained invalid between July 28, 1980, when it was signed into law, and July 1, 1981, when the General Assembly authorized and Montgomery County enacted the cooperative transfer tax ordinance. Parkside takes the position that the condominium transfer tax ordinance became "legally effective ... July 1, 1981, when the cooperative transfer tax went into effect." *Id.*, p. 11. Consequently, the argument continues, as the Parkside Condominium regime was established in April 1981, all transfers of units in Parkside Apartments fell within the exemption in Bill No. 22–80 for transfers of units in condominium regimes established "prior to the effective date of this law."

Montgomery County does not dispute some of the premises upon which Parkside's conclusion rests. Thus Montgomery County agrees that Bill No. 22–80, which enacted the condominium transfer tax, was inconsistent with the Horizontal Property Act during the period from July 28, 1980, to July 1, 1981. The County also seems to accept Parkside's statutory construction premise that, if Bill No. 22–80 could not be validly applied until July 1, 1981, when the cooperative transfer tax ordinance was enacted, then the effective date of the condominium transfer tax law for purposes of the exemption provision was July 1, 1981, rather than July 28, 1980.[6]

---

**6.** Although this interpretation is not disputed, it is not binding upon us. Nevertheless, we shall accept it for purposes of this appeal.

We note, however, that a contrary interpretation is arguable, under which the effective date of the ordinance for purposes of the exemption provision would remain July 28, 1980, even if the ordinance could not validly apply to impose a tax on transfers unless the transfers occurred after July 1, 1981. As previously discussed, Bill No. 22–80 provided that "[n]o transfer ... shall be taxed ... where ... [t]he transfer is of a unit in a condominium regime established ... prior to the effective date of this law...." The effective date clause of Bill No. 22–80 recited the typical language of an emergency bill and stated that it "shall take effect on the date on which it becomes law." Under §§ 112 and 208 of the Montgomery County Charter, such a bill apparently becomes law on the date it is signed by the County Executive, and Bill No. 22–80 was signed on July 28, 1980. While

Montgomery County's argument is that the condominium transfer tax ordinance was valid during the period from July 28, 1980, to July 1, 1981, that, because the ordinance was valid when enacted and signed, the effective date of the exemption provision was July 28, 1980, and that the Parkside condominium regime did not fall within the exemption provision because it was established in April 1981. Montgomery County contends that the condominium transfer tax ordinance was valid when enacted because it was authorized by Ch. 648 of the Acts of 1980. The County further argues that Ch. 648 is in direct conflict with the Horizontal Property Act but that, because Ch. 648 is a public local law enacted by the General Assembly, it prevails over a public general law under the rule of construction set forth in Code (1957, 1981 Rpl.Vol.), Art. 1, § 13. The County also relies upon the general principles of statutory construction that a later enacted statute prevails over an earlier one [7] and that

Parkside construes "effective date of this law" to mean "valid application of this law," this is not the only possible construction. As the application of the law to impose taxes would obviously be at various times in the future when transfers would take place, the Montgomery County Council may well have intended that the exemption provision apply only to condominium regimes established prior to July 28, 1980, regardless of when the law could validly apply to particular transfers.

Interestingly, when Bill No. 22–80 was codified as § 52–21(h) of the Montgomery County Code (1972, 1977 Repl.Vol., 1981 Cum.Supp) the words in the exemption provision stating "prior to the effective date of this law" became "prior to [July 28, 1980]." In the 1984 Montgomery County Code, the brackets were removed, with the phrase reading "prior to July 28, 1980." Ch. 25 of the Laws of Montgomery County 1985 "legalized" the 1984 Code and made it "prima facie evidence" of the ordinances, although it did not "adopt" the Code as law. *See Brenner v. Plitt,* 182 Md. 348, 360–362, 34 A.2d 853 (1943), explaining the difference between the two types of statutes recognizing codes.

7. *See, e.g., City of Baltimore v. State,* 281 Md. 217, 228, 378 A.2d 1326 (1977); *Department of Motor Vehicles v. Greyhound Corporation,* 247 Md. 662, 667, 234 A.2d 255 (1967); *Hensley v. Bethesda Metal Co.,* 230 Md. 556, 561, 188 A.2d 290 (1963); *Montgomery County v. Bigelow,* 196 Md. 413, 423, 77 A.2d 164 (1950); *Davis v. The State,* 7 Md. 151, 159 (1854).

a specific statute prevails over a general statute covering the same matter.[8]

Montgomery County contends that the language in the Horizontal Property Act, stating that if there is a conflict between the Horizontal Property Act and another statute, "the provisions of this title shall prevail" (now § 11–141, of the Real Property Article), is ineffective with regard to subsequent conflicting legislation. Reliance is placed upon this Court's opinion in *Montgomery County v. Bigelow*, 196 Md. 413, 423, 77 A.2d 164 (1950). Finally, Montgomery County asserts that the distinction between the tax treatment of initial condominium transfers and cooperative transfers did not violate equal protection principles.

In addition to the issues raised by the parties, a threshold question was raised at oral argument by the Court sua sponte, concerning the effect upon the case of condominium transfer taxes having already been paid to Montgomery County. We shall first address this matter and then turn to the parties' contentions.

### IV.

As previously mentioned, as of April 6, 1984, 928 of the 954 units in Parkside Apartments had been transferred to purchasers, and the condominium transfer taxes had been paid to Montgomery County on these transfers. At the oral argument before this Court, counsel represented that there were only "a few" units which had not been transferred and on which the transfer taxes had not been paid. Thus, the principal relief sought against Montgomery County is a refund of the taxes previously paid.

■ Under the circumstances, however, Parkside is not entitled in this litigation to a refund of taxes paid or a declaratory judgment with respect to taxes paid, regardless of the validity or interpretation of the condominium transfer

---

**8.** *See, e.g., Lumbermen's Mut. Casualty v. Ins. Comm'r*, 302 Md. 248, 269, 487 A.2d 271 (1985); *Henry v. State*, 273 Md. 131, 134 n. 1, 328 A.2d 293 (1974); *Maguire v. State*, 192 Md. 615, 623, 65 A.2d 299 (1949).

tax ordinance. The applicable principles of Maryland law have been set forth by this Court time after time. For example, in *Apostol v. Anne Arundel County*, 288 Md. 667, 672–673, 421 A.2d 582 (1980), we stated:

"It is firmly established in this State that once a taxpayer voluntarily pays a tax or other governmental charge, under a mistake of law or under what he regards as an illegal imposition, no common law action lies for the recovery of the tax absent a special statutory provision sanctioning a refund. This is true even if payment is made under protest. Moreover, in these circumstances, no common law or declaratory judgment action lies to challenge the validity of a tax so paid. Where there is a special statutory provision sanctioning a refund, although no particular statutory remedy is provided, an action in assumpsit is available. However, where there is statutory authorization for a refund and a special statutory remedy set forth, that remedy is exclusive. These principles have recently been reviewed at length in *Baltimore County v. Xerox Corp.*, 286 Md. 220, 406 A.2d 917 (1979); *White v. Prince George's Co.*, 282 Md. 641, 650–654, 387 A.2d 260 (1978); and *Rapley v. Montgomery County*, 261 Md. 98, 274 A.2d 124 (1971).

"Furthermore, the rule that no action lies to challenge the validity of a tax paid under a mistake of law, except for any refund sanction specifically provided by the Legislature, has been applied consistently by this Court, regardless of the nature of the legal attack mounted or the type of mistake of law claimed. *See, e.g., White v. Prince George's Co., supra*, 282 Md. at 646, 654 [387 A.2d 260] (tax claimed to be unconstitutionally retroactive); *Rapley v. Montgomery County, supra*, 261 Md. at 110 [274 A.2d 124] (tax claimed to be arbitrary and discriminatory, violative of the Maryland Constitution, and invalidly adopted); *Wasena Housing Corp. v. Levay*, 188 Md. 383, 392, 52 A.2d 903 (1947) (tax attacked on the ground that the procedure used to assess property was improper); *Red Star Line v. Baughman*, 153 Md. 607, 611, 139 A. 291 (1927) (license fees claimed to be unconsti-

tutional under the Commerce Clause); *Helser v. State,* 128 Md. 228, 231, 97 A. 539 (1916) (inheritance tax claimed to be invalid because of the situs of the mortgage involved); *Baltimore v. Harvey,* 118 Md. 275, 84 A. 487 (1912) (mistake as to the applicability of certain tax rates to particular real property); *Mayor, &c., of Baltimore v. Hussey,* 67 Md. 112, 9 A. 19 (1887) (personal property tax attacked on ground that it was invalidly applied to a nonresident); *Lester v. Mayor and City Council of Baltimore,* 29 Md. 415 (1868) (tax payment made under assessment subsequently declared invalid); *Morris v. Mayor & C.C. of Balt.* 5 Gill. 244, 248 (1847) (tax assumed by Court to be unauthorized and invalid); *M. & C.C. of Balt. v. Lefferman,* 4 Gill. 425 (1846) (governmental charge imposed under unconstitutional statute). The cases make it clear that actions to challenge taxes paid under mistakes of law 'are matters of grace with the Legislature.' *Wasena Housing Corp. v. Levay, supra,* 188 Md. at 389 [52 A.2d 903]."

Recent cases reaffirming these principles include *Wash. Sub. San. Comm'n v. Mitchell & Best,* 303 Md. 544, 572–573, 495 A.2d 30 (1985); *Vytar Associates v. City of Annapolis,* 301 Md. 558, 483 A.2d 1263 (1984); and *Potomac Elec. Power v. P.G. County,* 298 Md. 185, 189–191, 468 A.2d 325 (1983).

Accordingly, in this case no cause of action exists against Montgomery County for a refund of or a declaratory judgment concerning condominium transfer taxes which have been paid to the County. Nevertheless, because the transfer taxes have not been paid on a few units and because, as to future transfers, Parkside would be entitled to an injunction against Montgomery County if its arguments are sound, it is necessary for us to deal with the parties' contentions.

## V.

The General Assembly, by Ch. 648 of the Acts of 1980, clearly and specifically authorized Montgomery County to

impose the precise condominium transfer tax in question. The suggestion made by Parkside at one point that, because of the Horizontal Property Act, Ch. 648 should be construed simply to have granted Montgomery County "potential taxing power" to enact transfer taxes only if they were entirely in accordance with all prior enactments of the General Assembly, ignores the plain language and import of Ch. 648. Moreover, the suggested construction would render Ch. 648 meaningless, as Montgomery County already had such potential taxing authority. *See* Ch. 808 of the Acts of 1963 and Code (1957, 1981 Repl.Vol.), Art. 25A, § 5(o).[9] "It is a settled principle that, if reasonably possible, a statute should be construed 'so that no word, clause, sentence or phrase shall be rendered surplusage, superfluous, meaningless, or nugatory.'" *Williams v. William T. Burnett & Co.*, 296 Md. 214, 221, 462 A.2d 66 (1983), quoting *Supervisor v. Southgate Harbor*, 279 Md. 586, 590, 369 A.2d 1053 (1977). The clear purpose and effect of Ch. 648 was to authorize the specific condominium transfer tax ordinance in question, notwithstanding any previous enactments of the General Assembly which otherwise might have precluded or preempted the ordinance.

■ Therefore, to the extent that the Horizontal Property Act may have prevented local governments from imposing a condominium transfer tax like the one here involved, without imposing a cooperative transfer tax, Ch. 648 created a

---

**9.** Ch. 808 of the Acts of 1963 provided that

"[t]he County Council for Montgomery County is hereby empowered and authorized to have and exercise, within the limits of the county, in addition to any and all taxing powers heretofore granted by the General Assembly, the power to tax to the same extent as the state has or could exercise said power within the limits of the county as a part of its general taxing power; and to provide by resolution for the imposition, assessment, levy and collection of any tax or taxes authorized by this section; and from time to time to grant exemptions and to modify or repeal existing or future exemptions."

Art. 25A, § 5(o), is the provision of the Express Powers Act granting home rule counties broad taxing power.

specific, limited exception to the Horizontal Property Act for the Montgomery County condominium transfer tax ordinance.

As earlier set forth, the principal disputed legal issue in this case has been the resolution of the purported conflict between Ch. 648 of the Acts of 1980 and the section of the Horizontal Property Act relating to equality of burdens imposed upon similar property, now codified as § 11–122(b) of the Real Property Article. Montgomery County, relying upon Ch. 648 being later, more specific, and a public local law, contends that the 1980 statute prevails over the "conflicting" provision of the Horizontal Property Act. Parkside, invoking the section of the Horizontal Property Act purporting to invalidate subsequent conflicting enactments of the General Assembly (now § 11–141 of the Real Property Article), asserts that the "conflict" should be resolved in favor of the Horizontal Property Act.

In our view, however, there is no conflict between the equal burden provision of the Horizontal Property Act and Ch. 648 of the Acts of 1980. The equal burden provision of the Horizontal Property Act, § 11–122(b) of the Real Property Article) states that a *"county, city, or other jurisdiction* may not enact any law, ordinance, or regulation which would impose a burden or restriction on a condominium that is not imposed on all other property of similar character ..."* (emphasis added). The provision has utterly no application to laws enacted by the General Assembly which impose unequal burdens. Under settled principles, the words "or other jurisdiction" do not encompass the State. As recently pointed out by Chief Judge Murphy for the Court, "the State does not come within the provisions of a statute unless the enactment specifically names the State or manifests a clear and indisputable intent that it is within the provisions of the statute." *In re Arnold M.,* 298 Md. 515, 522, 471 A.2d 313 (1984). *See City of Balti-*

*more v. State,* 281 Md. 217, 223, 378 A.2d 1326 (1977), and cases there cited. The General Assembly obviously intended to prohibit counties, municipalities, special taxing districts or other local government agencies from using previously granted authority to impose burdens or restrictions upon condominiums which were not imposed upon similar property. There is no indication in the equal burden provision that the members of the General Assembly were attempting to restrict the General Assembly in the future, something which they are not ordinarily empowered to do. *See, e.g., Prince George's County v. Donohoe,* 220 Md. 362, 367, 152 A.2d 555 (1959); *State v. Fisher,* 204 Md. 307, 315, 104 A.2d 403 (1954); *Montgomery County v. Bigelow, supra,* 196 Md. at 423, 77 A.2d 164; *Wright v. Wright's Lessee,* 2 Md. 429, 449 (1852).

Ch. 648 of the Acts of 1980, therefore, is not in conflict with the Horizontal Property Act and specifically authorized the Montgomery County condominium transfer tax ordinance.

## VI.

In arguing that the Montgomery County condominium transfer tax ordinance violated equal protection guarantees during the period from July 28, 1980, until July 1, 1981, Parkside concedes that no suspect class or fundamental right is involved and that the so-called rational basis test is applicable (brief, pp. 19–20). Parkside goes on to agree that a stated purpose of the ordinance, namely " 'to help alleviate the shortage of rental housing and to help preserve the existing rental stock' " (*id.,* p. 21, quoting a statement of the County Executive), was valid and "was presumably furthered by the possible deterrent effect of the transfer tax upon the conversion of rental housing to condominium regimes." (*Ibid.*). What Parkside contends is that these objectives are "equally applicable to condominiums and cooperatives" and that "there is no reasonable difference

between condominiums and cooperatives which is relevant to the[se] purposes." (*Id.*, p. 23). With regard to an argument by Montgomery County "that the loss of rental stock as a consequence of condominium conversions in Montgomery County was far more substantial than that caused by cooperative conversions," Parkside replies that the County failed to substantiate this "by any evidence of record." (*Ibid.*).

In our view, Parkside's argument totally misconceives the applicable standards when an equal protection challenge on rational basis grounds is made to a tax statute. It is not necessary in such situation for the taxing authority to produce evidence showing that there was a social purpose underlying the particular tax statute and that the taxing classifications under the statute could all be explained by what was and what was not necessary to accomplish such social purpose. First, a tax statute need have no purpose other than the raising of revenue, and as long as the classifications made in imposing the tax are not utterly arbitrary, the tax statute meets the rational basis test for equal protection purposes. Moreover, there need not be evidence justifying the classifications; any "imaginable factual basis" will do. These principles were set forth by Judge Hammond for the Court in *Lane Corp. v. Comptroller*, 228 Md. 90, 178 A.2d 904 (1962). With regard to equal protection requirements as applied to tax statutes, he there stated (228 Md. at 97, 178 A.2d 904):

"It has been held not to impose on the states the requirement of absolute mathematical equality in regard to taxation. Rather, it permits great 'flexibility and variety that are appropriate to reasonable schemes of state taxation' as long as a classification is not *per se* or in practical operation palpably arbitrary. *Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522, 526 [79 S.Ct. 437, 440], 3 L.Ed.2d 480. '[T]he presumption of constitutionality can be overcome only by the most explicit demonstration that a

classification is a hostile and oppressive discrimination against particular persons and classes.' *Madden v. Kentucky,* 309 U.S. 83, 88 [60 S.Ct. 406, 408], 84 L.Ed. 590. If on any imaginable factual basis, the state legislature had a reason to distinguish between certain transactions, and thus to tax them somewhat differently, the classification will be upheld. *Allied American Co. v. Comm'r,* 219 Md. 607, 623 [150 A.2d 421]."

After quoting from *Lane* and many other cases, Judge Singley stated for the Court in *Villa Nova v. Comptroller,* 256 Md. 381, 391–392, 260 A.2d 307 (1970):

"The point is that the Legislature, when it passes a revenue measure, has the power to classify, and may impose varying tax burdens on different groups. It is only when the attempted classification has no reasonable basis in the nature of the businesses classified and burdens are imposed unequally on taxpayers between whom there is no real difference that the courts will interfere.... What was said in *Allied American Co. v. Comm'r,* 219 Md. 607, 150 A.2d 421 (1959) is appropriate here:

'The constitutional need for equal protection does not shackle the legislature. It has the widest discretion in classifying those who are to be regulated and taxed. Only if the grouping is without any reasonable basis, and so entirely arbitrary, is it forbidden. Abstract symmetry or mathematical nicety are not requisites. The selection need not depend on scientific or marked differences in things or persons or their relations. If any state of facts reasonably can be conceived that would sustain a classification, the existence of that state of facts as a basis for the passage of the law must be assumed. The burden is on him who assails a classification to show that it does not rest on any reasonable basis. [citing cases].' 219 Md. at 623 [150 A.2d 421]."

And later, in *Hooks v. Comptroller*, 265 Md. 380, 388–389, 289 A.2d 332 (1972), the Court reiterated:

"It has long been recognized that taxation is a practical affair, *Frank J. Klein v. Comptroller*, 233 Md. 490, 494, 197 A.2d 243 (1964), and that 'only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes' can the presumption of constitutionality be rebutted, *Madden v. Kentucky*, 309 U.S. 83, 88, 60 S.Ct. 406 [408], 84 L.Ed. 590 (1940). By its terms the Act does no more than impose a tax on the privilege of transferring certain property or providing certain services. . . . The fact that in a particular instance the effect of the tax imposed may be to treat certain transactions or taxpayers differently . . . does not amount to such a discriminatory classification as to be violative of constitutional guarantees, *Villa Nova v. Comptroller*, 256 Md. 381, 391, 260 A.2d 307 (1970)."

■ In the case at bar, Parkside has not met its burden of demonstrating that the classification between condominium and cooperative transfers, for tax purposes, is "palpably arbitrary." Thus, the circuit court properly rejected Parkside's equal protection argument.

## VII.

In conclusion, we are essentially in agreement with the judgment of the circuit court. Nevertheless, the declaratory portion of that judgment should be modified to reflect the holding in the opinion with respect to those transfers on which the tax has already been paid.

JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED IN PART AND VACATED IN PART, AND CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. APPELLANTS TO PAY COSTS.