471 A.2d 313

**In re ARNOLD M. et al.**

**No. 96, Sept. Term, 1983.**

Court of Appeals of Maryland.

Feb. 8, 1984.

516

Varda N. Fink and Daniel J. O'Brien, Asst. Attys. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Randall M. Lutz and James P. Casey, Asst. Attys. Gen., Baltimore, on brief), for appellants.

Dwight C. Price, Asst. State's Atty., Rockville (Andrew L. Sonner, State's Atty., Rockville, on brief), for appellees.

Argued before MURPHY, C.J., ELDRIDGE, COLE, DAVIDSON, RODOWSKY, COUCH and ORTH, CHARLES E., Jr., retired, specially assigned, JJ.

MURPHY, Chief Judge.

This case presents a narrow question of statutory interpretation, namely, whether Maryland Code (1980, 1983 Cum.Supp.), § 3–829 of the Courts and Judicial Proceedings Article, authorizes a juvenile court to order the State to pay restitution to a victim of a delinquent act committed by a juvenile while in the lawful custody of the State. In pertinent part, § 3–829 provides that the court may

"enter a judgment of restitution against the *parent* of a child, or the child in any case in which the court finds a child has committed a delinquent act . . . ." (Emphasis supplied.)

(1)

The facts are not in dispute. Four juvenile offenders were committed to the State Department of Health and Mental Hygiene (DHMH) and placed at the Regional Institute for Children and Adolescents (RICA), a State residen-

tial treatment facility for emotionally disturbed youths. The juveniles eloped from the institution in December of 1982, and thereafter assaulted and injured 74-year-old Amelia Hogan during an attempted robbery. Ms. Hogan incurred unreimbursed bills for medical expenses in the amount of $318.40.

The District Court of Maryland, sitting as a juvenile court in Montgomery County, found that the juveniles had attempted to rob Ms. Hogan and had therefore committed delinquent acts as charged in the juvenile petitions. The State's Attorney for Montgomery County subsequently filed restitution claims on the victim's behalf against the four juveniles. In addition, he sought a judgment of restitution against the State, DHMH and RICA (the State), on the theory that the State stood *in loco parentis* to the juveniles and was therefore a "parent" within the contemplation of § 3–829.[1] The juvenile court agreed with the State's Attorney; it entered judgment for Ms. Hogan against the juveniles and the State in the amount of $318.40. The State appealed to the Court of Special Appeals. We granted certiorari prior to decision by the intermediate appellate court to consider the important issue of statutory interpretation raised in the case.

(2)

Section 3–829 is one of thirty-five sections comprising the Juvenile Causes Subtitle of the Courts Article; the term "parent" is not defined in any of these sections. Interpreting the provisions of § 3–829 in *In Re James D.*, 295 Md. 314, 327, 455 A.2d 966 (1983), we said that "[t]he term 'parent' is commonly understood to mean a father or a mother." We noted, however, that *Webster's New International Dictionary* (2nd ed. 1947) defines the term as " 'sometimes used popularly and in statutes to include persons standing in loco parentis other than the natural parents.' "

---

1. The propriety of the State's Attorney's action against the State and its agencies has not been questioned and we express no view of its legality.

*Id.* at 327, 455 A.2d 966. Our holding in *James D.* was that the legislature, in enacting § 3–829, did not intend to place liability upon a mother or father of a child for a delinquent act committed while in the custody of the State. Specifically, we said that to "avoid constitutional conflicts [that might otherwise arise] . . . our interpretation of 'parent' in the statute does not include the father or mother of a child where the child has been removed from their care and custody by court order and is not residing in their home at the time of the incident for which recovery is sought." *Id.* at 316, 455 A.2d 966.

The juvenile court read *James D.* in light of § 3–829 "to provide the victim [of a delinquent act] with some means of compensation for loss of property or personal injury." It said that no such remedy was available against the child's parents where the State had custody of the juvenile at the time of the delinquent act and, further, that it was not realistic to believe that the juvenile would satisfy a judgment of restitution. Consequently, the trial judge concluded that the legislature did not intend to restrict the word "parent" in § 3–829 to the child's biological parents but rather intended to include one standing *in loco parentis* to the juvenile, other than the natural parents. He said that the State's custody and control of a committed juvenile placed it in such an *in loco parentis* position and that it would, therefore, be "liable for the full restitution to a victim in a situation in which a juvenile escaped or eloped from state custody, and committed some type of offense against the person or property of another."

The State argues before us that nothing in *James D.* requires a holding that the State, while having legal custody of a delinquent child, is a "parent" within the sense contemplated by § 3–829. It maintains that the ordinary and plain meaning of the word "parent" does not embrace the State. In support of the lower court's ruling, the State's Attorney argues that *James D.* is authority for the proposition that a "parent" under § 3–829 includes parental substitutes, and that as the State stands *in loco parentis* to the juveniles, it is

by necessary implication a "parent" within the meaning of the statute. He points out that under chapter 900 (Juvenile Causes) of the Maryland Rules, and specifically Rule 901 b 4, a "parent" specifically includes "a child's parent, guardian and custodian"; and that § 3–801(j) of the Juvenile Causes Subtitle of the Courts Article defines a "Custodian" to mean "a person or agency to whom legal custody of a child has been given by order of the court, other than the child's parent or legal guardian." Reading the statute and the rule together, the State's Attorney reasons that the term "parent" in § 3–829 embraces and includes the State as custodian where, as here, the delinquent child has been lawfully committed to its care and custody. Particularly is this so, it is further argued, because the dual purpose of the statute, as recognized in *James D.,* is to compensate innocent victims of delinquent acts committed by juvenile offenders and to deter them from such acts by encouraging close supervision and control by those standing *in loco parentis,* including the State. Not to include the State as a "parent" under § 3–829, according to the State's Attorney, is to render the statute ineffective, there being no other source from which to pay compensation to the victim, and no other entity capable of exercising supervision over the child.

(3)

We have said time and again that the cardinal rule of statutory interpretation is to ascertain and effectuate the legislative intention. *Koyce v. State, Central Collection Unit,* 289 Md. 134, 422 A.2d 1017 (1980); *Harbor Island Marina v. Calvert Co.,* 286 Md. 303, 407 A.2d 738 (1979). The primary source of legislative intent is the language of the statute itself, with the words used being given their ordinary and popularly understood meaning, absent a manifest contrary legislative intention. *Blum v. Blum,* 295 Md. 135, 453 A.2d 824 (1983); *Board v. Stephans,* 286 Md. 384, 408 A.2d 1017 (1979). Thus, where the provisions of the statute are clear and unambiguous, no construction or clarification is needed to ascertain the intention of the legislature. *Hornbeck v. Somerset Co. Bd. of Educ.,* 295 Md. 597, 458

A.2d 758 (1983); *Brown v. Brown,* 287 Md. 273, 412 A.2d 396 (1980). In other words, where unambiguous statutory language expresses a definite and sensible meaning, courts are not at liberty to disregard the natural import of the words used with a view towards making the statute express an intent which is different from its plain meaning. *Maryland Auto. Ins. Fund v. Stith,* 277 Md. 595, 356 A.2d 272 (1976); *Purifoy v. Merc.-Safe Dep. & Trust,* 273 Md. 58, 327 A.2d 483 (1974). Manifestly, therefore, a statute must be construed without resorting to subtle or forced interpretations for the purpose of extending or limiting its operation. *Guy v. Director,* 279 Md. 69, 367 A.2d 946 (1977); *Slate v. Zitomer,* 275 Md. 534, 341 A.2d 789 (1975).

The cases indicate that the word "parent" in a statute should be afforded its common and ordinary meaning. *See, e.g., Nunn v. Nunn,* 81 N.M. 746, 473 P.2d 360 (1970); *Marshall v. Indus. Comm'n,* 342 Ill. 400, 174 N.E. 534 (1930); *Appeal of Gibson,* 154 Mass. 378, 28 N.E. 296 (1981); *Prudential Ins. Co. of Am. v. Warner,* 328 F.Supp. 1128 (W.D.Va. 1971). *See also Hahn v. Brown,* 51 Ohio App.2d 177, 367 N.E.2d 884 (1976), a case involving a statute similar to § 3–829, which subjected "parents" to liability for delinquent acts committed by their children. The court there rejected a claim made against the State under the statute, holding that the mere fact that the juvenile had been committed to the State's care and custody did not convert the State into the status of a "parent" within the meaning of the statute.

■ We think it fully evident that the plain and popularly understood meaning of the term parent is, as we said in *James D.,* "a father or a mother." 295 Md. at 327, 455 A.2d 966. That, in our view, is the legislature's intended meaning of the term as used in § 3–829, qualified only by the exclusion of mothers and fathers not in custody of the juvenile at the time of the delinquent act. That the State may stand *in loco parentis* to juveniles committed to its institutional care and custody does not make it a "parent"

within the contemplation of the statute. Had the legislature intended that the State come within the ambit of the statute, it would not have used the word "parent" in § 3–829, since no commonly understood meaning of that word encompasses the State, its agencies or instrumentalities.[2] *See Brown, supra,* 287 Md. at 285, 412 A.2d 396, stating the principle that where the legislature intends that a commonly used word have other than its ordinary meaning, it generally defines explicitly the scope of the word as so used. Moreover, it is a well-recognized principle that the State does not come within the provisions of a statute unless the enactment specifically names the State or manifests a clear and undisputable intent that it is within the provisions of the statute. *City of Baltimore v. State,* 281 Md. 217, 223, 378 A.2d 1326 (1977); *Harden v. Mass Transit Adm.,* 277 Md. 399, 408, 354 A.2d 817 (1976).

We think the juvenile court lost sight of these basic and controlling principles when it entered a judgment of restitution against the State. The State's Attorney's arguments in support of the juvenile court's decision, as previously set forth, are similarly flawed; they are clearly contrary to the plain meaning rule of statutory interpretation. To accept the State's Attorney's construction of § 3–829 is to rewrite the statute by extending its provisions well beyond their plain import by requiring the State to indemnify the losses of all victims of delinquent acts perpetrated by juveniles committed to State institutions. No such result was intended by the legislature. In so concluding, we have considered the provisions of § 3–829, not in isolation, but together with other pertinent parts of the Juvenile Causes Subtitle of the

---

2. *Black's Law Dictionary* 1003 (5th ed. 1977) defines "parent" to mean "the lawful father or mother of a person." *Ballentine's Law Dictionary* 911 (3rd ed. 1969) defines "parent" to mean "[i]n common parlance, the lawful father or mother by blood." *Webster's Third New International Dictionary* 1641 (Unabridged 1961) defines a "parent" "as including a person standing in loco parentis, although not a natural parent." None of these definitions include the State as a "parent."

Courts Article, which bear on the proper interpretation to be afforded to § 3–829.[3]

In view of our conclusion, we need not consider the further question raised in the case as to whether the doctrine of sovereign immunity bars restitution against the State and its agencies under § 3–829.

JUDGMENT REVERSED, COSTS TO BE PAID BY THE APPELLEE.

---

**3.** Another argument presented by the State's Attorney to support his interpretation of § 3–829 is that under the child abuse statute, Code (1982 Repl.Vol.), Art. 27, § 35A, persons standing *in loco parentis* to a minor, other than the child's parents or adoptive parents, are subject to prosecution. The plain words of the statute require this interpretation. Nothing in our cases is authority, by analogy or otherwise, for the conclusion that under § 3–829 the State is a "parent" and, as such, subject to the statute's provisions.