550 A.2d 69

**NATIONWIDE MUTUAL INSURANCE COMPANY**

v.

**UNITED STATES FIDELITY & GUARANTY COMPANY et al.**

**No. 160, Sept. Term, 1986.**

Court of Appeals of Maryland.

Nov. 28, 1988.

Rodger O. Robertson (A. Douglas Owens, on the brief), Baltimore, for appellant.

M. King Hill, Jr. (Smith, Somerville & Case, Baltimore, for part of appellee U.S. Fidelity & Guar. Co.; Ralph S. Tyler, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, for other appellee Treasurer of Maryland), all on one brief, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH,* McAULIFFE and ADKINS, JJ.

ELDRIDGE, Judge.

In *Harden v. Mass Transit Adm.*, 277 Md. 399, 354 A.2d 817 (1976), this Court held that, under the pertinent provisions of the Maryland Insurance Code and the Maryland Vehicle Law, now codified in Code (1957, 1986 Repl.Vol.), Art. 48A, §§ 539 through 546, and Code (1977, 1987 Repl. Vol., 1988 Supp.), §§ 17–101 through 17–110 of the Transportation Article, the State of Maryland was not required to provide "no fault" Personal Injury Protection (PIP) benefits for persons occupying or injured by state motor vehicles, and that a motor vehicle liability insurance policy covering state motor vehicles did not have to contain coverage for such benefits. The issue in the instant case is whether the decision in *Harden* remains viable.

## I.

Before turning to the facts of this case, it would be useful to review the pertinent statutory provisions and the holding in *Harden.*

---

* Couch, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

## A.

Subtitle 35 of the Insurance Code, consisting of §§ 538 through 547A, relates to required coverages in motor vehicle casualty insurance policies issued in Maryland. Among other things, the subtitle mandates coverage for medical, hospital and disability benefits, for uninsured motorist benefits, and for personal injury and property damage liability. Thus, § 539 states that "[n]o policy of motor vehicle liability insurance shall be issued, sold or delivered in this State ... unless the policy also affords the minimum medical, hospital, and disability benefits set forth herein" for persons injured in motor vehicle accidents.[1] The bene-

---

1. Art. 48A, § 539, in its entirety states as follows:

"(a) No policy of motor vehicle liability insurance shall be issued, sold or delivered in this State after January 1, 1973, unless the policy also affords the minimum medical, hospital and disability benefits set forth herein; or unless equivalent medical, hospital, and disability benefits are provided by a policy issued to the insured by a nonprofit health service plan or by an authorized insurer with the policy in each case subject to approval by the Commissioner. The benefits, or their equivalent, shall cover the named insured and members of his family residing in his household (except such persons as may be specifically excluded in accordance with § 240C–1 of this article) injured in any motor vehicle accident (including an accident involving an uninsured motor vehicle or a motor vehicle whose identity cannot be ascertained), other persons injured while occupying the insured motor vehicle as a guest or passenger, or while using it with the express or implied permission of the named insured (except as provided in § 240C–1 of this article), and pedestrians injured in an accident in which the insured motor vehicle is involved or individuals injured in, on, or alighting from any other vehicle operated by animal or muscular power in an accident in which an insured vehicle is involved. The minimum medical, hospital and disability benefits shall include up to an amount of $2,500, for payment of all reasonable expenses arising from the accident and incurred within three years from the date thereof for necessary medical, surgical, x-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services; and in the case of an income producer, payment of benefits for loss of income as the result of accident; and where the person injured in the accident was not an income or wage producer at the time of the accident, payments of benefits must be made in reimbursement of necessary and reasonable expenses incurred for essential services ordinarily performed by the injured person for care and maintenance of the

fits prescribed by § 539, commonly known as "Personal Injury Protection" or "PIP" benefits, are payable without regard to fault (§ 540(a)). Section 541(c)(2) requires that "every policy of motor vehicle liability insurance issued .... in this State ... shall contain coverage ... for damages which the insured is entitled to recover from" an uninsured motorist.[2] Under § 541(a) of the Insurance Code, every

---

family or family household. The insurer providing loss of income benefits may require, as a condition of receiving such benefits that the injured person furnish the insurer reasonable medical proof of his injury causing loss of income.

"(b) The provisions of this section do not apply to policies issued, sold or delivered in this State to insure vehicles as defined in §§ 11–105 and 11–165 of the Transportation Article of the Annotated Code of Maryland."

2. Art. 48A, § 541(c), provides as follows:

"(c) *'Uninsured motor vehicle' defined; uninsured motorist coverage; limit of insurer's liability.*—(1) In this subsection 'uninsured motor vehicle' means a motor vehicle whose ownership, maintenance, or use has resulted in the bodily injury or death of an insured, and for which the sum of the limits of liability under all valid and collectible liability insurance policies, bonds, and securities applicable to the bodily injury or death is less than the amount of coverage provided to the insured under this subsection.

"(2) In addition to any other coverage required by this subtitle, every policy of motor vehicle liability insurance issued, sold, or delivered in this State after July 1, 1975 shall contain coverage, in at least the amounts required under Title 17 of the Transportation Article, for damages which the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in an accident arising out of the ownership, maintenance, or use of such uninsured motor vehicle. There shall be available to the insured the opportunity to contract for higher amounts than those provided under Title 17 of the Transportation Article if these amounts do not exceed the amounts of the motor vehicle liability coverage provided by the policy. The coverage required under this subsection (c) shall be in such form and subject to such conditions as may be approved by the Commissioner of Insurance. Any provision in any policy of motor vehicle liability insurance issued after July 1, 1975, with respect to the coverage provided for damages sustained by the insured as a result of the operation of an uninsured motor vehicle, which commands or requires the submission of any dispute between the insured and the insurer to binding arbitration, is prohibited and shall be of no legal force or effect. In no case shall the uninsured motorist coverage be less than the coverage afforded a qualified person under Article

motor vehicle casualty insurance policy issued in Maryland must provide specified minimum liability coverage.

■ If an insurance policy "issued, sold, or delivered" in Maryland omits or purports to exclude a particular coverage required by law, the omission or exclusion is ineffective, and the insurance policy will be applied as if the minimum required coverage were contained in the policy. *See, e.g., Gable v. Colonial Insurance Company*, 313 Md. 701, 703, 548 A.2d 135 (1988), and cases there cited; *Lee v. Wheeler*, 310 Md. 233, 528 A.2d 912 (1987); *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 517 A.2d 730 (1986).

Whereas subtitle 35 of the Insurance Code relates to the contents of motor vehicle casualty insurance policies issued, sold, or delivered in Maryland, Title 17 of the Transportation Article of the Code, which is part of "the Maryland Vehicle Law,"[3] concerns the "required security" which must be maintained on a "motor vehicle that is required to be registered in" Maryland (§ 17–104(b)). Ordinarily the "required security" is a motor vehicle insurance policy (§ 17–103(a)(1)), although the State Motor Vehicle Adminis-

---

48A, §§ 243H and 243–I. However, the insurer may exclude from coverage benefits for:

"(i) The named insured or members of his family residing in the household when occupying, or struck as a pedestrian by, an uninsured motor vehicle that is owned by the named insured or a member of his immediate family residing in his household; and

"(ii) The named insured, members of his family residing in the household, and all other persons having other applicable automobile insurance and occupying, or struck as a pedestrian by, the insured motor vehicle operated or used by a person excluded from coverage under § 240C–1 of this article. The coverage required under this subsection shall be primary to any right to recovery from the Maryland Automobile Insurance Fund pursuant to § 243H of this article."

"(3) The limit of liability for an insurer providing uninsured motorist coverage under this subsection is the amount of that coverage less the sum of the limits under the liability insurance policies, bonds, and securities applicable to the bodily injury or death of the insured."

**3.** Titles 11 through 27 of the Transportation Article of the Code make up "the Maryland Vehicle Law." *See* § 11–206 of the Transportation Article.

tration may accept another form of security in place of an insurance policy (§ 17–103(a)(2)). As would be expected, the "minimum benefits" which the required security must provide for under the Transportation Article generally parallel the Insurance Code's required coverages in motor vehicle insurance policies issued in Maryland. They include PIP benefits (§ 17–103(b)(3)), uninsured motorist benefits (§ 17–103(b)(4)), and payment of liability claims (§ 17–103(b)(1), (2)). The sanctions in the Transportation Article for violations of the required security provisions are, *inter alia*, suspension of vehicle registration and criminal prosecution (§§ 17–104 through 17–109).

## B.

*Harden v. Mass Transit Adm.*, *supra*, 277 Md. 399, 354 A.2d 817, was a declaratory judgment action by several persons who, while passengers on Mass Transit Administration (MTA) buses, had been injured in motor vehicle accidents. The defendants in the declaratory judgment action were the MTA and the Transit Casualty Company. The MTA was (and is today) a state agency which owned and operated the buses, and the Transit Casualty Company was a private insurer which had issued a motor vehicle liability insurance policy covering the buses at the time of the accidents. The *Harden* plaintiffs had sought from both the MTA and the Transit Casualty Company PIP benefits on account of their injuries, but the MTA and the Transit Casualty Company had refused to pay the claims. The refusals were based on the defendants' assertions that the insurance policy did not cover PIP claims, that the Insurance Code did not mandate coverage for PIP benefits in policies insuring state owned and operated motor vehicles, and that the MTA, under the required security provisions of the Maryland Vehicle Law, was not obligated to provide PIP benefits for state owned and operated vehicles. *Harden v. Mass Transit Adm.*, *supra*, 277 Md. at 402–404, 354 A.2d at 818–819. The plaintiffs countered that the plain language of subtitle 35 of the Insurance Code and of the

required security provisions of the Vehicle Law covered the insurance policy and the vehicles involved. 277 Md. at 405, 407, 354 A.2d at 819–820.

This Court in *Harden* agreed with the defendants' position, holding as follows (277 Md. at 413, 354 A.2d at 824):

"We conclude that there was no manifest intention demonstrated on the part of the General Assembly to include MTA within the 'no fault' insurance provisions and that if it had intended to include MTA within those provisions it would have made a specific provision to that effect."

The Court relied chiefly on the principle of statutory construction that a statute regulating or affecting the activity of persons or corporations is ordinarily construed as not encompassing the government itself unless it expressly so provides, 277 Md. at 408–409, 411–413, 354 A.2d at 822–824. *See, e.g., United States v. United Mine Workers,* 330 U.S. 258, 270–276, 67 S.Ct. 677, 685–687, 91 L.Ed. 884 (1947); *United States v. Cooper Corporation,* 312 U.S. 600, 61 S.Ct. 742, 85 L.Ed. 1071 (1941); *M. & C.C. v. Balto. Gas Co.,* 232 Md. 123, 135–136, 192 A.2d 87 (1963); *State v. Rich,* 126 Md. 643, 649, 95 A. 956 (1915), all cited in the *Harden* opinion. *See,* in addition, *In re Arnold M.,* 298 Md. 515, 522, 471 A.2d 313 (1984); *City of Baltimore v. State,* 281 Md. 217, 223, 378 A.2d 1326 (1977), and cases there cited.

As a result of the statutory construction holding of the *Harden* case, § 539 of the Insurance Code, which generally required PIP coverage in all motor vehicle liability insurance policies issued in Maryland, was not deemed to embrace insurance policies on state owned and operated vehicles. Similarly, the required security provisions of the Maryland Vehicle Law, now codified in § 17–103 of the Transportation Article of the Code, did not require the State of Maryland or state agencies to provide PIP benefits for persons injured in or by state owned and operated motor vehicles.

## II.

The facts of the present case are not significantly different from the facts of *Harden,* although the present case involves state owned and operated automobiles used by various state agencies instead of MTA buses, and this case involves uninsured motorist benefits as well as PIP benefits.

The case grew out of four separate motor vehicle accidents involving state owned and operated automobiles and state employees. In one accident, a State Highway Administration automobile being driven by a state employee, Robert N. Stout, was involved in a collision in Baltimore City, resulting in Mr. Stout's incurring medical expenses and lost wages. Another accident, in Westminster, involved a Maryland State Police automobile driven by Marion K. Bowers, who also incurred medical expenses and/or lost wages. An automobile used by the State Department of Health and Mental Hygiene, in which Vanessa V. Garrett was a passenger, was involved in an accident in Anne Arundel County, causing Ms. Garrett to incur both medical expenses and lost wages.

The fourth accident involved a collision in Baltimore City between a State Department of Transportation automobile, in which Jerome Spann was a passenger, and an uninsured motor vehicle. The collision was allegedly caused by the negligence of the driver of the uninsured vehicle. Mr. Spann suffered personal injuries, and incurred medical expenses and lost wages.

During the period when the accidents took place, the four state automobiles were covered by a motor vehicle liability insurance policy issued to the State of Maryland by the United States Fidelity and Guaranty Company (USF & G). This policy did not contain coverage for PIP or uninsured motorist benefits. Nevertheless, Robert Stout, Marion Bowers, Vanessa Garrett, and Jerome Spann filed PIP claims with USF & G, and Jerome Spann also filed with USF & G a claim for uninsured motorist benefits. USF & G, however, declined to pay the claims.

Throughout the relevant period, the four state employees were covered by personal automobile insurance policies issued by Nationwide Mutual Insurance Company. As required by subtitle 35 of the Insurance Code, these Nationwide policies provided coverage for PIP and uninsured motorist benefits. After their claims were denied by USF & G, the four state employees filed PIP claims with Nationwide. In addition, Mr. Spann filed an uninsured motorist claim with Nationwide.

Nationwide then filed the present declaratory judgment action in the Circuit Court for Baltimore City against USF & G and the four state employees. Nationwide sought the following declaratory relief from the circuit court:

"A. Declare that USF & G is not authorized under the laws of Maryland to issue a motor vehicle liability insurance policy which does not afford personal injury protection coverage, pursuant to Article 48A, Section 539, Annotated Code of Maryland.

"B. Declare that any policy of automobile insurance issued by USF & G to the State of Maryland does afford personal injury protection as required by Maryland law, specifically Article 48A Section 539, and any other statute relating thereto.

"C. Declare that USF & G is obligated to reimburse the medical expenses and lost wages of Robert N. Stout, Marion K. Bowers, Vanessa V. Garrett and Jerome Spann."

Nationwide sought a similar declaration concerning the uninsured motorist claim of Jerome Spann.[4]

William S. James, then Treasurer of the State of Maryland, moved to intervene, in his official capacity, as an

---

**4.** Nationwide's prayer for relief, with regard to the uninsured motorist claim, was as follows:

"A. Declare that USF & G is not authorized under the laws of Maryland to issue a motor vehicle liability insurance policy which does not afford uninsured motorist coverage pursuant to Article 48A, Section 541(c), Annotated code of Maryland.

additional defendant. The reason for the Treasurer's requested intervention was stated to be that he is the public official "responsible for all programs of purchased insurance for the State," that he made the decision not to purchase PIP and uninsured motorist insurance, and that if a judgment were entered against USF & G, "the Treasurer will be required to purchase uninsured motorist coverage and personal injury protection in policies of liability insurance for State vehicles." The Treasurer's motion for intervention was granted.

Thereafter, USF & G and the State Treasurer filed motions for summary judgment, attaching documents relating to the State's invitation for bids for "automobile fleet liability insurance." It was argued that *Harden v. Mass Transit Adm.*, *supra*, was dispositive.

The circuit court granted the motions for summary judgment and filed a declaratory judgment. The court declared that USF & G "is not required to afford personal injury protection coverage pursuant to Art. 48A, Section 539 [or uninsured motorist coverage pursuant to § 541(c)] in its policy of insurance issued to the State of Maryland," and that the State is not required to purchase insurance containing PIP and uninsured motorist coverage.

Nationwide appealed to the Court of Special Appeals. Before the case was heard in that court, we issued a writ of certiorari. We shall affirm.

### III.

Nationwide's principal argument is that §§ 539 and 541(c) of subtitle 35 of the Insurance Code "plainly require that

"B. Declare that any policy of automobile insurance issued by USF & G to the State of Maryland does afford uninsured motorist coverage as required by Maryland law, specifically Article 48A, Section 541(c), and any other statute relating thereto.

"C. Declare that USF & G is obligated to pay all sums which Jerome Spann shall be legally entitled to recover as damages from Trent Green or Joseph Ryles, if Trent Green and Joseph Ryles are found to be uninsured motorists in *Spann v. Green, et al.*"

insurance carriers provide the specified coverages in every automobile liability policy issued in Maryland." (Appellant's brief p. 4). Nationwide points out that subtitle 35 of the Insurance Code contains express exceptions to the required coverages, but that an exception for state owned and operated automobiles is "not within those express statutory exceptions." (*Id.* at p. 5). Nationwide quotes from *Pennsylvania Nat'l Mut. v. Gartelman*, 288 Md. 151, 156, 416 A.2d 734, 737 (1980), that " '[w]here a statute expressly provides for certain exclusions, others should not be inserted.' " Nationwide argues that the "exclusion claimed by USF & G is also contrary to the remedial purposes underlying the required coverages." (Appellant's brief p. 6). Finally, Nationwide points out that this Court has "consistently disallowed exclusions which are inconsistent with the public policy of providing compulsory automobile insurance with specified required coverages for all Maryland automobiles" (*id.* at p. 7), citing *Jennings v. Government Employees Ins.*, 302 Md. 352, 488 A.2d 166 (1985); *Pennsylvania Nat'l Mut. v. Gartelman, supra,* and other cases.

If in this case USF & G were urging us to imply an exception to the required coverages other than one for state vehicles, there would be much force to Nationwide's argument. *See, e.g., Gable v. Colonial Insurance Company, supra,* 313 Md. at 704, 548 A.2d at 137 ("where the Legislature has required specified coverages in a particular category of insurance, and has provided for certain exceptions or exclusions to the required coverages, additional exclusions are generally not permitted"); *Lee v. Wheeler, supra,* 310 Md. at 238–239, 528 A.2d at 915; *State Farm Mut. v. Nationwide Mut.,* 307 Md. 631, 637–638, 516 A.2d 586, 589 (1986); *DeJarnette v. Federal Kemper Ins. Co.,* 299 Md. 708, 725, 475 A.2d 454 (1984). *See also Insurance Com'r v. Prop. & Cas. Corp.,* 313 Md. 518, 531–532, 546 A.2d 458, 464–465 (1988).

Nevertheless, the principle applied in the *Harden* case, that a statute regulating persons and corporations does not include the government itself unless that intention

is clear, has been consistently adhered to in this State for a long time. This Court in *State v. Milburn,* 9 Gill 105, 118 (1850), quoted Justice Story as follows (*United States v. Hoar,* 2 Mason 311, 314–315, 26 Fed.Cas. 329 (Fed.Cas. No. 15,373, Circ.Ct., D.Mass.1821)):

"In general, acts of the legislature are meant to regulate and direct the acts and rights of citizens; and in most cases the reasoning applicable to them applies with very different, and often contrary force to the government itself. It appears to me, therefore, to be a safe rule founded in the principles of the common law, that the general words of a statute ought not to include the government, or affect its rights, unless that construction be clear and indisputable upon the text of the act."

More recently, in *City of Baltimore v. State, supra,* 281 Md. at 223, 378 A.2d at 1329, we reiterated that

"the State is not deemed to be bound by an enactment of the General Assembly unless the enactment specifically names the State or manifests a clear and indisputable intention that the State is to be bound."

*See, e.g., Nordheimer v. Montgomery County,* 307 Md. 85, 100, 512 A.2d 379 (1986); *In re Arnold M., supra,* 298 Md. at 522, 471 A.2d at 316 ("the State does not come within the provisions of a statute unless the enactment specifically names the State or manifests a clear and undisputable intent that it is within the provisions of the statute.... *Harden v. Mass Transit Adm.* ...").

The pertinent language of subtitle 35 of the Insurance Code has not changed since the *Harden* decision. The basic relevant language of § 539, requiring PIP benefits, and § 541(c), requiring uninsured motorist benefits, has remained the same since those provisions were enacted in 1972 and 1975, respectively. The State of Maryland is not mentioned, and the wording shows no "indisputable intention that the State is to be bound." *City of Baltimore v. State, supra,* 281 Md. at 223, 378 A.2d at 1329. The same is true concerning § 17–103(b)(3) and (4) of the Transportation Article, providing that PIP and uninsured motorist

benefits are part of the required security for Maryland registered motor vehicles.

Consequently, the principle applied in the *Harden* case, that state regulatory legislation is not ordinarily construed to bind the State itself, remains fully applicable to §§ 539 and 541(c) of the Insurance Code, and § 17–103(b) of the Transportation Article, relating to PIP and uninsured motorist benefits.

There is another reason for not departing from the holding of the *Harden* case. The General Assembly has reenacted with amendments §§ 539 and 541 of the Insurance Code, as well as title 17 of the Transportation Article, on several occasions since our decision in *Harden.* Nevertheless, as pointed out above, the General Assembly has not changed the particular language construed in *Harden* and relied on by Nationwide in the present case. Under these circumstances, a court should be most reluctant to overrule its prior interpretation of that statutory language. The controlling principle was explained in *Williams v. State,* 292 Md. 201, 210, 438 A.2d 1301 (1981), as follows:

"The General Assembly is presumed to be aware of this Court's interpretation of its enactments and, if such interpretation is not legislatively overturned, to have acquiesced in that interpretation. *Harden v. Mass Transit Adm.,* 277 Md. 399, 406, 354 A.2d 817 (1976). This presumption is particularly strong whenever, after statutory language has been interpreted by this Court, the Legislature re-enacts the statute without changing in substance the language at issue. *Harbor Island Marina v. Calvert Co.,* 286 Md. 303, 322–323, 407 A.2d 738 (1979); *Director v. Cash,* 269 Md. 331, 345, 305 A.2d 833 (1973) *cert. denied sub nom. Vucci v. Boslow, Institution Director,* 414 U.S. 1136, 94 S.Ct. 881, 38 L.Ed.2d 762 (1974); *Macke Co. v. St. Dep't of Assess. & T.,* 264 Md. 121, 132–133, 285 A.2d 593 (1972); *Stack v. Marney,* 252 Md. 43, 49, 248 A.2d 880 (1969). Under these circumstances,

it is particularly inappropriate to depart from the principle of stare decisis and overrule our prior interpretation of the statute. *White v. Prince George's Co.,* 282 Md. 641, 657–658, 387 A.2d 260 (1978). *See also Flood v. Kuhn,* 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972)." *Accord: Frank v. Storer,* 308 Md. 194, 203, 517 A.2d 1098 (1986); *Farmers & Merchants Bank v. Schlossberg,* 306 Md. 48, 60, 507 A.2d 172 (1986); *Foster v. State,* 304 Md. 439, 479–480, n. 20, 499 A.2d 1236 (1985), *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3310, 92 L.Ed.2d 723 (1986); *Calhoun v. State,* 299 Md. 1, 11, 472 A.2d 436 (1984).[5]

Under the circumstances, therefore, Nationwide's reliance upon the broad language of §§ 539 and 541(c) of the Insurance Code is misplaced.

---

**5.** Nationwide suggests that the *Harden* case should be read narrowly, as applying only to MTA buses, and that if *Harden* is viewed in this manner, acceptance of Nationwide's argument in the present case would not overrule our prior interpretation of the statutory language. While the Court in *Harden* did discuss the statutory provisions relating only to the MTA, clearly the principal ground for the *Harden* holding, as previously discussed, was the rule that state regulatory legislation does not ordinarily bind the State itself. Moreover, in applying this rule, there is no basis for distinguishing between MTA buses and other state motor vehicles. Nationwide's argument would have us ignore both the reasoning underlying the *Harden* decision and a consistently adhered-to rule concerning the State Government.

Nationwide also points to § 539(b) of the Insurance Code, enacted after *Harden,* and exempting insurance policies on buses and taxicabs from the provisions of § 539 requiring PIP benefits in motor vehicle insurance policies. Nationwide argues that § 539(b) represents the General Assembly's confirmation "that *Harden* is properly read as excluding only MTA buses from the compulsory insurance requirements of Article 48A, § 539." (Appellant's brief p. 15). In our opinion, § 539(b), enacted by Ch. 655 of the Acts of 1977 and Ch. 819 of the Acts of 1978, has little or nothing to do with the General Assembly's view regarding the scope of *Harden.* The subsection applies to buses and taxicabs generally; it is not specifically directed to state vehicles. Apparently, the subsection was designed to exempt private taxicabs and private buses from the PIP requirements. In fact, Ch. 819 of the Acts of 1978, as originally introduced, contained a provision which would arguably have overruled *Harden* with regard to MTA vehicles. That provision excepted from the exemption government owned or leased buses; the provision was deleted before final passage.

## IV.

In addition to its argument based on the language of §§ 539 and 541(c) of the Insurance Code, Nationwide alternatively relies upon two provisions of the Transportation Article enacted after the *Harden* case was decided.

## A.

The first of these provisions is § 1–101(j)(2) of the Transportation Article, which was enacted in 1977 as part of the original Transportation Article of the Code.[6] That section states:

"(j) *Person.*—'Person' includes:

\*     \*     \*     \*     \*     \*

"(2) Unless the context requires otherwise, this State, any county, municipal corporation, or other political subdivision of this State, and any of their agencies or units."

Nationwide points out that, under § 17–104(b) of the Transportation Article, the "owner" of a motor vehicle must maintain the required security which includes PIP and uninsured motorist benefits. Nationwide next points out that in the definitional title of the Maryland Vehicle Law, § 11–143 of the Transportation Article defines "owner" to include "a person" having "the property in or title to the vehicle." And, since § 1–101(j)(2) of the Transportation Article defines "person" to include the State, Nationwide concludes that, under § 17–104(b), the State must maintain PIP and uninsured motorist coverage on its vehicles.

Although there might seem to be some plausibility in Nationwide's syllogistic reasoning, we are not persuaded that, by enacting § 1–101(j)(2) of the Transportation Article, the General Assembly intended to change the statutory interpretation holding of *Harden* and require PIP and uninsured motorist coverage on state vehicles.

When the General Assembly has legislated with respect to PIP and uninsured motorists benefits, including both

---

6. The section was originally numbered § 1–101(f)(2).

requirements and exemptions, it has done so expressly and in the Insurance Code. *See* Art. 48A, §§ 539, 540, 541(c), 541(e), 541(f), 542, 543, 544, 545. The statutory provision which, according to Nationwide, removes an exemption from the required PIP and uninsured motorist coverage, does not specifically address motor vehicle insurance coverage, required security, or even motor vehicles. The provision is neither contained in the Insurance Code, nor the required security title of the Maryland Vehicle Law, nor in the definitional title of the Maryland Vehicle Law. Instead, the statutory section relied on by Nationwide is a qualified definition of "person" for purposes of the entire Transportation Article generally. Section 1–101(j)(2) is equally applicable to the statutes relating to, for example, the Secretary of Transportation, the State Aviation Administration, airport zoning, the Maryland Port Administration, the State Roads Commission, the Transportation Trust Fund, etc. In our view, if the General Assembly had intended to remove the State's exemption from the requirement of PIP and uninsured motorist coverage, it is virtually inconceivable that it would have done so simply by enacting a definition of "person" for the Transportation Article generally.

Moreover, as discussed in Part III above, the controlling principle in cases like this is that state regulatory legislation does not bind the State itself "unless the enactment specifically names the State or manifests a clear and undisputable intent that it is within the provisions of the statute." *In re Arnold M., supra,* 298 Md. at 522, 471 A.2d at 316. The language of § 1–101(j)(2) of the Transportation Article certainly does not manifest a clear and undisputable intent that §§ 539(a) and 541(c) of the Insurance Code, and § 17–103(b) of the Maryland Vehicle Law, apply to the State itself.

As mentioned earlier, § 1–101(j)(2) of the Transportation Article was enacted in 1977 when the various articles of the code relating to transportation were consolidated and recodified as the Transportation Article. The 1977 Revisor's note to the subsection states as follows:

"This subsection is new language setting forth a broad definition of the word 'person' as used in this article. It is similar to like definitions appearing in previously revised articles of the Code.

"In item (2) of this subsection, the phrase 'unless the context requires otherwise' is intended to indicate that inclusion of these governmental entities in the general meaning of 'person' is not intended in any way to modify or otherwise affect any extant rules or laws relating to the doctrine of sovereign immunity, statutes of limitations, or any other rights, duties, or functions of these entities."

Thus, according to the Revisor, the provision was not intended to change any "rights, duties, or functions of" the State Government. Consequently, it was not intended to effect the type of substantive change argued for by Nationwide. As we have frequently stated, "the revisor's note is a useful guide to the legislative purpose underlying [a] change in statutory language." *Rohrbaugh v. Estate of Stern*, 305 Md. 443, 450, 505 A.2d 113 (1986), and cases there cited. Furthermore, even if there had been no revisor's note, we have often pointed out "that a language change effected during the course of formal code revision accomplishes no substantive change absent the clearest legislative intent." *McGarvey v. State*, 311 Md. 233, 242, 533 A.2d 690 (1987).[7]

For all of the above reasons, we reject Nationwide's reliance upon § 1-101(j)(2) of the Transportation Article.

### B.

The other statutory provision relied on by Nationwide is § 17-107(c) of the Transportation Article, which was added

---

7. Finally, we note that § 1-101(j)(2) is a definition and that the various editions of the *Style Manual of the Commission To Revise the Annotated Code of Maryland and the Maryland Revisor of Statutes* have consistently provided that substantive changes in the law or extensions of the law are not to be made by definition. *See, e.g. Manual* of December 1, 1985, p. 34; *Manual* of March 31, 1983, p. 36; *Manual* of November 1973, p. 38.

by Ch. 250 of the Acts of 1981.[8] That subsection states as follows:

"(c) *Defense of sovereign immunity.*—An owner or lessee of any motor vehicle registered under Title 13 of this article may not raise the defense of sovereign or governmental immunity, to the extent of benefits provided by the security accepted by the Administration under § 17-103 of this subtitle, in any judicial proceeding in which the plaintiff claims that personal injury, property damage, or death was caused by the negligent use of the motor vehicle while in government service or performing a task of benefit to the government."

Nationwide's argument is as follows (Appellant's brief pp. 11–12):

"Chapter 250, Acts 1981, now codified as Transportation Article, Section 17-107(b), expressly prohibited the defense of sovereign immunity 'to the extent of benefits provided by the security accepted by the Administration under Section 17-103 of this subtitle.' The security required by Transportation Article, Section 17-103, includes PIP and UM coverages."

In our view, the language of Ch. 250 of the Acts of 1981, waiving sovereign immunity to the extent of the required security accepted by the Motor Vehicle Administration under § 17-103, indicates no intent to require coverage for PIP and uninsured motorist benefits on state motor vehicles. We believe that the reference to "required security" in Ch. 250 is to security for personal injury and property damage tort liability.

This Court's holding in *Harden v. Mass Transit Adm.,* *supra,* 277 Md. at 411–413, 354 A.2d at 824, was *expressly* *not* based upon any principle of sovereign immunity. The Court did "not reach the issue of sovereign immunity." 277

---

8. When added in 1981, the subsection was numbered § 17-107(b). It was renumbered as a result of a 1988 amendment.

Md. at 413, 354 A.2d at 824. Instead, the Court's holding that the statutory requirements of PIP and uninsured motorist coverage were inapplicable to the State, was based solely on the Court's construction of the Insurance Code and the Maryland Vehicle Law. The Court held that, if the General Assembly had intended to include the State "within the 'no fault' insurance provisions," then "it would have made a specific provision to that effect." *Ibid.*

On the other hand, Ch. 250 of the Acts of 1981, as its language shows, related solely to the defense of sovereign or governmental immunity. It simply prohibited raising the sovereign immunity defense in court under certain circumstances.[9] The statutory language refers to defending common law tort liability causes of action based on negligence. It has nothing to do with first party contractual or statutory claims for "no fault" insurance benefits.

The title to Ch. 250 reinforces the conclusion that the statute was exclusively concerned with common law tort liability claims asserted in a judicial proceeding against the State. The title stated (emphasis added):

> "FOR the purpose of barring the defense of sovereign or governmental immunity to a certain extent in certain *judicial proceedings based on the negligent* use of a motor vehicle while in government service or performing a task of benefit to the government; and generally relating to the defense of sovereign or governmental immunity in certain motor vehicle accident cases."

The limitation, in terms of judicial proceedings based on negligent conduct, negates a broad construction of the statute making it applicable to all forms of required security.

In addition, the documents in the Department of Legislative Reference's file concerning Ch. 250 of the Acts of 1981,

---

9. *See also* Ch. 298 of the Acts of 1981, enacting the Maryland Tort Claims Act, effective July 1, 1982.

during the course of its progress through the Legislature, demonstrate that the "required security" mentioned in the bill was *liability* insurance or self-insurance for *liability*. For example, the memorandum submitted to the Legislature by the Secretary of Transportation, in support of the bill which became Ch. 250, stated (emphasis added):

"While the state and many subdivisions carry *auto liability insurance*, at least six subdivisions or municipalities are certified as self insurers under the vehicle laws.

"Since those entities carrying insurance have posed no problems to auto injury victims, this bill addresses those governmental bodies which are self-insured and are represented by their own legal departments.

Passage of this bill would waive sovereign or governmental immunity as a defense for those entities to the extent of the *minimum automobile liability limits required by the financial responsibility laws.*"

The report of the Senate Judicial Proceedings Committee on the bill which became Ch. 250 also shows that the "required security" referred to was limited to personal injury and property damage tort *liability* coverage. The report stated:

"This Bill would prohibit a defendant to a tort suit from raising the defense of sovereign immunity in a case where a government vehicle is in an accident in which personal injury, property damage or death is alleged so long as the vehicle was being used in the scope of employment or doing a task to benefit the local government. This immunity would only be waived to the present required limits of 20–40 & 10."

In sum, Ch. 250 of the Acts of 1981 did not have the effect of subjecting state motor vehicles to the requirements of PIP and uninsured motorist coverage.

JUDGMENT OF THE CIRCUIT COURT OF BALTIMORE CITY AFFIRMED. APPELLANT TO PAY COSTS.